No. 91-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

EDWARD C. MUSSELMAN and
PAULINE L. MUSSELMAN, husband and wife,

     Plaintiffs and Respondents,

-vs-

MOUNTAIN WEST FARM BUREAU
MUTUAL INSURANCE COMPANY,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Laurence R. Martin and Randall G. Nelson;
Felt, Martin, Frazier & Lovas, Billings, Montana.

     For Respondents:

          Robert L. Johnson, Attorney at Law,
Lewistown, Montana.

FILED

JAN 16 1992

Filed Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 19, 1991

Decided:  January 16, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Mountain West Farm Bureau Insurance Company appeals from an order of the Tenth Judicial District Court, Fergus County, granting respondents Edward and Pauline Musselman's, cross-motion for summary judgment. The District Court found that respondents purchased a fire insurance policy from appellant. The policy extended coverage to the respondents' house at an agreed value of $66,000. The house was totally destroyed by fire. The appellant paid respondents only $50,000 of the agreed value. The District Court ruled that § 33-24-102, MCA, the valued policy statute, controls and entered a judgment against appellant of $18,777 which included interests and costs. We affirm.

The appellant raised the following issues on appeal:

1. Whether the District Court erred when it held that § 33-24-102, MCA, controls and that respondents were entitled to payment under their insurance policy in an amount equal to the agreed property value of $66,000.

2. Whether the District Court erred when it did not enforce the pro rata clause contained in the respondents' fire insurance policy.

The parties have agreed to the following facts which are uncontroverted by the record. In May 1988, respondents purchased from appellant a fire insurance policy covering certain property in Fergus County, as well as a house located in Hamilton. By the terms of the policy, appellant valued the house at $66,000 and

2

agreed to insure the house for that amount should the house be considered a total loss.

Apparently the only road to the house went through some neighboring property. The neighbor closed the road. The respondents attempted to gain access to the house through litigation but were unsuccessful.

On September 23, 1988, respondents agreed to sell the house to Bill Chesley for $50,000. The contract for sale was handwritten by one of the parties to the sale, and it is not disputed by the parties to this appeal that it is a valid contract for sale. Respondents notified appellant about the transaction with Chesley and continued their coverage to protect their interest in the home. Sometime later Chesley was able to obtain access to the house.

Chesley then purchased a fire insurance policy from Farmers Insurance Group (hereinafter "FIG") to protect his equitable interest in the house. The policy had an agreed value of $109,000. Chesley then assigned "Ed Musselman" as loss payee to receive the proceeds under the FIG policy to the extent of whatever unpaid balance on the home Chesley should owe to the respondents. Chesley made only two payments on the contract for sale before defaulting.

On March 3, 1989, a fire totally destroyed the house. No criminal activity was involved. Both insurance policies were in effect at the time of the fire.

Initially, FIG refused to pay the respondents, arguing that the contract for sale was not valid and that Chesley did not have

an insurable interest. Respondents initiated litigation against FIG upon which FIG paid respondents the amount of Chesley's unpaid balance on the home, plus interest for a total of $51,330. On July 17, 1989, appellant remitted $50,000 of the agreed value of $66,000. Appellant claimed that respondents were only entitled to proceeds equal to their insurable interest which appellant argues is the amount agreed to in the contract for sale, i.e., $50,000.

On February 9, 1990, respondents filed their complaint in District Court requesting that appellant pay the remaining balance of the agreed value stated in the insurance policy. On April 20, 1990, appellant filed its answer and counterclaim. On May 1, 1990, respondents motioned the court for summary judgment pursuant to Rule 56, M.R.Civ.P. On May 22, 1990, appellant filed a cross-motion for summary judgment and a motion for summary judgment on its counterclaim. On September 10, 1990, a hearing was held on the motions. On January 7, 1991, the District Court granted respondents' motion for summary judgment on their complaint and against appellant's counterclaim. The District Court ruled that § 33-24-104, MCA, controls and entered a judgment against the appellant for a sum of $18,648, which included interest, and an additional $129 for costs. Appellant appeals from the adverse ruling.

For the District Court to grant summary judgment the record must not contain any genuine issue of material fact. Rule 56(c), M.R.Civ.P. Initially, the burden rests with the moving party to

prove that no genuine issue of fact exists. Once that is done, then the burden shifts upon the nonmoving party to present facts of a substantial nature that a material issue of fact indeed does exist.

In order for this Court to determine whether a district court's granting of summary judgment was proper, we must determine whether there is any genuine issue of material fact. If there is not, then the moving party is entitled to summary judgment as a matter of law. Reagan v. Union of California (1984), 208 Mont. 1, 6, 675 P.2d 953, 956. The moving party is entitled to judgment on the law applicable to the facts established by the pleadings, depositions, answers to interrogatories, and admissions in the record. Jordan v. Elizabeth Manor (1979), 181 Mont. 424, 428, 593 P.2d 1049, 1052.

I

Whether the District Court erred when it held that § 33-24-102, MCA, controls and that respondents were entitled to payment under their insurance policy in an amount equal to the agreed property value of $66,000.

We begin our analysis with the doctrine of equitable conversion. Under the doctrine, a contract of purchase and sale of real estate vests the entire beneficial interest in the land with the buyer. During the course of the contract, the seller retains a legal title to the land as security for the purchase price. The buyer's interest is a real interest, while the seller's interest is

5

one of personal property in the purchase price. Sharbono v. Darden (1984), 220 Mont. 320, 324, 715 P.2d 433, 435. Here, the respondents had an interest in the property to insure, as did Chesley. With this point in mind, we will analyze appellant's various arguments.

Appellant argues that the insurable interest statue of § 33-15-205, MCA, conflicts with the valued policy statute of § 33-24-102, MCA, and that § 33-15-205, MCA, should control, and that the terms of the insurance policy itself limit the respondents to their insurable interest stated in the contract for sale with Chesley. Appellant alleges that it is liable to the respondents only for the insurable interest of the house which is established by the contract for sale and not the agreed value stated in the insurance policy. We disagree.

Section 33-24-102, MCA, states in part:

> Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss or damage and the property insured is considered to be a total loss, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages. [Emphasis added.]

In Britton v. Farmers Ins. Group (1986), 221 Mont. 67, 72-73, 721 P.2d 303, 307, we commented that the "statute determines automatically and conclusively the amount of loss recoverable for total loss," and that it "may obviate even the necessity of a proof of loss." The law prevents insurers from creating a question of

6

total loss "to compromise its duty to pay the full amount or to negotiate a lesser amount." Britton, 721 P.2d at 307.

The enactment of valued policy laws in several jurisdictions rests almost entirely on public policy grounds. The purpose of the statute is to protect the insured by relieving him of the burden of trying to prove the value of a house. 45 C.J.S. Insurance § 916 (1946).

Appellant claims that the terms of the insurance policy limit the recovery to the respondents' insurable interest. The disputed fire insurance policy contained the following clause:

> **Insurable interest and Limit of liability.**
> Even if more than one person has an insurable interest in the property covered, we shall not be liable:
>   a. To the **insured** for an amount greater than the **insured's** interest; nor
>   b. For more than the applicable limit of liability.

We agree with the Michigan Supreme Court's position in Wilson v. Fireman's Insurance Company (Mich. 1978), 269 N.W.2d 170, where the court held that despite language in the insurance policy similar to the one quoted above, the insurer was required to pay the insured land contract seller the full amount stated under the policy. In that case, the court held that the seller maintained insurance on the property after the sale, no evidence was introduced that the premium was less than the usual for such a house, as would happen only if a debt was due to the seller, and that the risk to the insurer was not increased by the transaction. Wilson, 269 N.W.2d at 172.

7

In the case before us, respondents informed the appellant's agent about the contract for sale with Chesley. No evidence in the record indicated that appellant's risk was increased, nor did it adjust the respondents' premium after the transaction. We hold that the terms of the insurance policy do not necessarily limit the respondents to the unpaid balance of the contract.

## II

Whether the District Court erred when it did not enforce the pro rata clause contained in the respondents' fire insurance policy.

In McCarter v. Glacier Gen. Ass. Co. (1976), 169 Mont. 269, 273, 546 P.2d 249, 251, we noted that pro rata policies are not unlawful per se but are generally valid and enforceable. The clause appellant is referring to stated the following:

> **Other Insurance.** If you are carrying other insurance on the property to which this policy applies, the coverage under this policy is null and void. We may permit other insurance, however, by endorsement to this policy. If other insurance is permitted, we will not be liable for a greater portion of any loss than our pro rata share on excess of any deductible.

Appellant argues that the second and third sentences of the proration clause apply to the facts of this case and that the term "other insurance" means insurance carried on the property by anyone. However, we note that this case involves two separate individuals insuring two entirely different interests. A leading treatise on insurance law has discussed the effect of other insurance clauses relating to these facts.

8

By definition, other or double insurance exists where two or more policies of insurance are effected upon or cover the same interests in the same property, against the same risks, and in favor of, or for the benefit of, the same person.  As all of these conditions must concur, it follows that <u>if different persons have different interests in the same subject of insurance</u>, each may insure his interest without effecting other or double insurance.  [Emphasis added.]

Couch on Insurance 2d (Rev Ed) § 37B:104 (1985).

In this instance, we have two separate interests being insured.  Chesley assigned his right to proceeds from his insurance policy to the respondents.  The assignment has allowed respondents to receive insurance benefits in excess of the value of the home and property.  Although this type of situation works against the justification for insurance which is one of indemnification and not profit, we believe that insurance companies are in a better position to draft policies to prevent such occurrences as what happened here.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

January 16, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Laurence R. Martin and Randall G. Nelson
Felt, Martin, Frazier & Lovas
P.O. Box 2558
Billings, MT 59103-2558

Robert L. Johnson
Attorney at Law
Ste. 507, Montana Bldg.
Lewistown, MT 59457

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
 Deputy