No. 92-416

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

BONNIE LYNN ALDERINK BENNETT,

      Plaintiff and Respondent,

-vs-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant and Appellant.



FILED

NOV - 4 1993

*Ed Smith*

CLERK OF SUPREME COURT.
STATE OF MONTANA

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

      For Appellant:

          Pamela A. Okano (argued) and William R. Hickman;
          Reed McClure Law Firm, Seattle, Washington
          Allen P. Lanning; Conklin, Nybo and LeVeque, Great
          Falls, Montana

      For Respondent:

          Lyman H. Bennett (argued); Morrow, Sedivy & Bennett,
          Bozeman, Montana

      For Amicus Curiae:

          Michael D. Cok (argued); Cok & Wheat, Bozeman,
          Montana (for Montana Trial Lawyers)
          Patrick R. Sheehy; Halverson, Sheehy & Plath,
          Billings, Montana (for Montana Trial Lawyers)
          Peter F. Habein and Mary E. Duncan; Crowley,
          Haughey, Hanson, Toole & Dietrich, Billings,
          Montana (for Farmers Insurance Exchange)

Submitted:  May 6, 1993

Decided:  November 4, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This case is before us on a question certified to this Court by the United States Court of Appeals for the Ninth Circuit. We accepted certification by order dated August 27, 1992.

Respondent Bonnie Alderink Bennett (Bennett) brought an action in the Eighteenth Judicial District Court, Gallatin County, Montana, seeking a declaration that she was entitled to the cumulative amount of the "underinsured motorist coverage" provided by two automobile insurance policies issued to Bennett and her husband by State Farm Mutual Automobile Insurance Company (State Farm). State Farm removed the case to the United States District Court for the District of Montana.

On February 14, 1991, the Honorable Paul G. Hatfield entered declaratory judgment in Bennett's favor, holding that State Farm is required, under the terms of the underinsured motorist endorsements in the two contracts of insurance between it and the Bennetts, to extend coverage to Bennett in the amount of $100,000 for each policy. Bennett v. State Farm Mutual Automobile Insurance Co. (D. Mont. 1991), 758 F.Supp. 1388. State Farm appealed.

The Ninth Circuit heard oral argument on July 8, 1992, and subsequently issued its order certifying the following question to this Court:

> Is an "other insurance" clause which prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer void as against public policy?

Bennett was a pedestrian crossing East Babcock Street in

Bozeman, Montana, on October 6, 1986, when she was struck by a pickup truck operated by Lloyd A. Wind. She sustained bodily injury with damages alleged to be in excess of $200,000. Wind had liability insurance with Allstate Insurance Company and on his behalf Allstate paid Bennett $100,000 on May 7, 1987.

At the time of the accident Bennett was insured under two separate policies issued by State Farm in 1984. The first policy was issued to her husband, Lyman H. Bennett III, and covered a 1981 Chrysler. The second policy was issued to Bennett and covered a 1976 Oldsmobile. Both policies included "Coverage W," for damage caused by an underinsured vehicle.

Coverage W defines an underinsured motor vehicle as one "whose limits of liability for bodily injury liability are less than the amount of the insured's damages." Each of the Bennetts' policies limited State Farm's liability under Coverage W to $100,000 per person and $300,000 per accident. The Bennetts paid separate premiums for Coverage W on each policy.

On June 12, 1987, State Farm paid Bennett and her husband $100,000. State Farm asserts that the following "other insurance" clause in Coverage W limits its liability to $100,000:

> If the insured sustains bodily injury as a pedestrian and other underinsured motor vehicle coverage applies:
>
> a.    the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and
>
> b.  we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable to the accident.

3

This court has consistently invalidated insurance contract clauses that limit the insurer's liability for uninsured motorist coverage. Grier v. Nationwide Insurance Co. (1991), 248 Mont. 457, 812 P.2d 347. For example, we held in Kemp v. Allstate Insurance Co. (1979), 183 Mont. 526, 601 P.2d 20, that where separate premiums have been charged and collected on each vehicle for uninsured motorist coverage, the insured is entitled to recover up to the aggregate sum of the coverages on all the vehicles so insured. Consistent holdings appear in Sullivan v. Doe (1972), 159 Mont. 50, 495 P.2d 193; Chaffee v. U.S. Fidelity & Guaranty Co. (1979), 181 Mont. 1, 591 P.2d 1102; and Sayers v. Safeco Insurance Co. (1981), 192 Mont. 336, 628 P.2d 659. The public policy embodied in these decisions is that an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration.

State Farm contends that this public policy applies only to uninsured motorist coverage, which a Montana insurer is required by § 33-23-201, MCA, to offer to all its customers. As Bennett has no statutory right to underinsured motor vehicle coverage, State Farm argues, the "other insurance" clause in her policy does not defeat public policy.

We disagree. The purpose of underinsured motorist coverage is to provide a source of indemnification for accident victims when the tortfeasor does not provide adequate indemnification. State Farm Mutual Automobile Insurance Co. v. Estate of Braun (1990), 243 Mont. 125, 793 P.2d 253. The public policy expressed in Braun, and

4

in the earlier cases cited above, favors adequate compensation for accident victims. The absence of a statutory requirement is irrelevant, for the public policy considerations that invalidate contractual "anti-stacking" provisions in an uninsured motorist endorsement also support invalidating those provisions in an underinsured motorist endorsement.

State Farm's second argument is that an insured cannot reasonably expect dual coverage, and that each of the Bennetts had paid for only $100,000 worth of underinsured motorist protection, not for $200,000 worth. A reasonable insured buying a policy on a second car does not expect to increase the limits of coverage on the car that he or a family member has already insured, State Farm argues, but instead expects the limits of coverage on the new policy to apply only to the car that policy insures.

This argument might be persuasive if it were not for the clear and unambiguous language of State Farm's insurance policy, which states in Coverage W that "[w]e will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." This statement makes underinsured motorist coverage personal to the insured; coverage does not depend on the insured person occupying an insured vehicle. See Chaffee, 591 P.2d at 1104, in which we reached the same conclusion with regard to uninsured motorist coverage. Thus, Bennett could reasonably expect to recover damages up to the limit of both policies under which she was an insured and for which separate premiums had been paid.

5

In Transamerica Insurance Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820, we invalidated a "household exclusion" clause in an automobile liability policy because it did not honor the reasonable expectations of the insured. We reaffirmed that decision in Wellcome v. Home Insurance Co. (Mont. 1993), 849 P.2d 190, 193, 50 St.Rep. 305, 307, stating that the "reasonable expectation doctrine is in accord with our strong public policy that insurance is intended to serve a fundamental protective purpose." We affirm it again here. Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased.

We answer the certified question as follows: An "other insurance" clause that prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer is void as against Montana public policy.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

6

_____
Justices

_____
Hon. James E. Purcell, Judge
of the District Court, sitting
with the Court in the seat made
vacant by the retirement of
Justice R.C. McDonough

7

Justice Fred J. Weber specially concurs as follows:

I concur with the majority conclusion because I believe that is required under previous Montana decisions. However, I wish to express grave concerns with regard to the theory of the case:

As pointed out in the majority opinion, this Court has invalidated insurance contract clauses which limited the insurer's liability for <u>uninsured</u> motorist coverage. Those cases followed the 1967 enactment of § 40-4403, RCM (1947), the predecessor to § 33-23-201, MCA, which expressed the limitation that no motor vehicle liability policy should be issued unless coverage was provided for those who are legally entitled to recover damages from operators of <u>uninsured</u> motor vehicles. That public policy was clearly defined and adopted by the Montana Legislature. It was appropriate that such public policy as determined by the Legislature should be enforced by this Court. However, that theory does not apply to the present case.

Here we have an <u>underinsured</u> motorist coverage question. The Montana Legislature has not made a declaration of public policy covering <u>underinsured</u> motorist coverage. The majority opinion has reached the following conclusion:

> Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased.

Unfortunately that conclusion directly contradicts the very clear provision of the insurance policy itself. Principles of contract law which are applied in other cases are not considered here.

8

Instead we have injected a "reasonable expectation" standard with which we justify a nullification of clear contract provisions.

In the absence of a legislative policy declaration, I question that this Court has a basis to define the nature of the "reasonable expectations" of the purchasers of insurance policies. If we are free to effectively cancel contract provisions on an underinsurance theory, can that analysis on our part be applied to a cancellation of any and all other provisions in insurance contracts? Can a similar theory be applied to other contract instruments which come before us, such as notes, mortgages, contracts for deed, and similar instruments? I suggest that we have now proceeded beyond the reasonable bounds of judicial discretion.

It may now be appropriate that the Legislature examine this area and set forth its views of policies regarding such insurance contracts.

Justice

9