No. 00-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 28

NATIONAL CASUALTY COMPANY,

a Wisconsin corporation,

Plaintiff and Interpleader,

STEVEN SUMMERS,

Defendant and Appellant,

v.

AMERICAN BANKERS INSURANCE COMPANY

OF FLORIDA, an Insurance Company,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable Ed McLean, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Charles J. Tornabene, Tornabene & McKenna, Missoula, Montana

For Respondent:

Lon T. Holden and Brian L. Taylor, Jardine, Stephenson, Blewett

and Weaver, Great Falls, Montana (American Bankers)

Thomas R. Bostock, Warden, Christiansen, Johnson & Berg,

Kalispell, Montana (National Casualty)

Submitted on Briefs: July 20, 2000

Decided: February 15, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Steven Summers (Summers) appeals from the order of the Fourth Judicial District Court granting American Bankers Insurance Company of Florida (American Bankers) proceeds that National Casualty Company (National) deposited with the court when it filed an interpleader action. American Bankers cross-appeals the order denying its motion for attorney fees. We affirm.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err in concluding that American Bankers' "other insurance" clause was enforceable?

¶4. Did the District Court err in concluding § 33-24-102, MCA, has no application in the present case?

¶5. Did Summers preserve for appeal a pro rata reimbursement issue?

¶6. Did the District Court abuse its discretion in denying American Bankers' motion for attorney fees?

## Factual and Procedural Background

¶7 Summers owned a home in Missoula for which he purchased insurance in 1995 from American Bankers. In March of 1997, Summers' agent, acting on Summers' direction, obtained an insurance policy from National. Summers intended to replace rather than supplement, the American Bankers policy with the National policy; however, neither Summers nor his agent canceled the American Bankers policy or informed American Bankers of the policy with National. Summers continued to make premium payments for the American Bankers policy.

¶8 Both of the policies contained "other insurance" clauses. The American Bankers policy provided:

> **Other Insurance**. If the insurance provided by this policy is also provided by other insurance, the coverage under this policy will terminate as of the effective date of the other insurance.

> National's policy provided:

> **Other Insurance.** If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

¶9 In November, 1997, a fire destroyed Summers' house. Summers submitted a claim to American Bankers and received $80,000, which was the policy limit. American Bankers subsequently learned of Summers' policy with National. National filed an interpleader action in the District Court and deposited its policy limit of $77,000 with the clerk of court. Both American Bankers and Summers claimed entitlement to the deposited monies and filed cross-motions for summary judgment.

¶10 The District Court granted American Bankers' summary judgment motion and concluded that the "other insurance" clause in American Bankers' policy should be enforced and that Summers' policy with American Bankers therefore terminated when Summers obtained an insurance policy with National. The court also determined that § 33-24-102, MCA, which provides that the amount of insurance written in a policy "shall be taken conclusively to be the true value of the property insured," could not be applied to

two separate insurance policies as Summers advocated because the "specific language of the statute limits its application to recovery for property improvement losses under a single insurance policy."

¶11 The court ordered that American Bankers was entitled to the $77,000 that National had interpled as well as the $3,000 difference in the two policy limits. The court ordered Summers to reimburse American Bankers for that difference less the $470.00 Summers paid American Bankers in premiums after obtaining the insurance policy with National. The court also denied American Bankers' motion for attorney fees, concluding in part that the common law equitable exception to the rule that parties are responsible for their own attorney fees did not apply as Summers' arguments were neither "frivolous nor malicious in nature."

## Discussion

¶12 1. Did the District Court err in concluding that American Bankers' "other insurance" clause was enforceable?

¶13 Our standard of review in appeals from summary judgment orders is *de novo*. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M. R.Civ.P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In the case at hand, both parties moved for summary judgment, agreeing that there were no genuine issues of material fact. We are guided in our interpretation of insurance policies by the well-established principle that when the language of a policy is clear and explicit, the policy should be enforced as written. Nat'l Farmers Union Property & Cas. v. George, 1998 MT 205, ¶ 12, 290 Mont. 386, ¶ 12, 963 P.2d 1259, ¶ 12.

¶14 Relying on the public policy enunciated in automobile insurance cases, Summers claims that American Bankers' "other insurance" clause is void as a matter of public policy. See Bennett v. State Farm Mut. Auto. Ins. (1993), 261 Mont. 386, 390, 862 P.2d 1146, 1149. Summers argues that American Bankers should not now be allowed to avoid liability under a policy for which it accepted premium payments.

¶15 American Bankers responds that the public policy that victims shall receive adequate compensation does not prevent enforcement of "other insurance" clauses. American

Bankers argues that Summers has already been fully compensated and that public policy precludes Summers from profiting by receiving a double recovery for his property loss. Citing the rule that when clear, an insurance policy should be enforced, American Bankers asks the Court to affirm the District Court's decision. Summers does not argue that the policy is ambiguous but again emphasizes that public policy demands that insurance companies not escape liability under insurance policies for which they have accepted premium payments.

¶16 Our decisions allowing the stacking of multiple insurance policies in automobile insurance cases were predicated on the public policy that victims should be compensated for their losses. We have held that multiple uninsured and underinsured motorists policies should be stacked when an insured who is named in multiple policies has proven damages that exceed the limits of an individual policy. *Bennett*, 261 Mont. at 390, 862 P.2d at 1149. Our decisions do not support providing a windfall to an insured who has suffered a property loss and has been fully compensated for that loss under his insurance policy.

¶17 Summers has not claimed that if he were limited to recovery from one policy, he would not be adequately compensated. He merely states that nothing in the record indicates the value of the property, and therefore there is nothing in evidence to prove he would actually *profit* from receiving payments from both insurance companies. The public policy enunciated in *Bennett* does not apply in the present case as Summers has not even suggested that his loss exceeds the limits of his policy with National. The fact that Summers intended to have a single policy insuring his house for $77,000 indicates that he has already been fully compensated for his property loss.

¶18 The language of American Bankers' insurance policy is clear and explicit, and this Court finds no public policy reason to avoid its provisions. Although some authorities suggest that escape clauses may be considered unconscionable when "though there was technically other collectible insurance, enforcement of the clause would result in the insured losing all coverage," the present case is not such a situation. Couch on Insurance 3d, § 219:37 (1999). American Bankers has done precisely what we recommended in *Musselman*, when we advised, "we believe that insurance companies are in a better position to draft policies to prevent" situations which provide an insured with a profit. Musselman v. Mountain West Farm Bureau Mut. Ins. (1992), 251 Mont. 262, 268, 824 P.2d 271, 275. We affirm the District Court ruling that the contract be enforced as written, and that, as written, its "other insurance" clause terminated the policy at the time Summers procured an insurance policy with National protecting the same property.

¶19 2. Did the District Court err in concluding § 33-24-102, MCA, has no application in the present case?

¶20 Section 33-24-102, MCA, provides:

> **Insuring improvements - insurance equal to true value.** Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss or damage and the property insured is considered to be a total loss, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.

¶21 Summers argues that this "value stated" statute applies in the present case and that it requires that he receive the sum of the two policies he inadvertently maintained. Summers contends that since the "actual or appraised value of the property has never been ascertained and could possibly be in excess of the coverage of the two policies," the total coverage of both policies should be taken conclusively to be the true value of the property.

¶22 In Issue 1, we affirmed the District Court holding that Summers' policy with American Bankers terminated when he obtained his policy with National and we therefore need not address this issue. According to our holding in Issue 1, Summers only had one policy in effect at the time of the fire. Summers has already received the full amount of that coverage and consequently the application of § 33-24-102, MCA, would have no effect on the present case.

¶23 3. Did Summers preserve for appeal a pro rata distribution issue?

¶24 Summers admits he did not raise the issue of pro rata distribution in the District Court, but argues that the issue nonetheless was squarely before the court. Summers argues that the issue was raised when National asked the court to "determine the right, if any, of each Defendant to share in the interpleaded sum and the amount of such share," and therefore requests this Court to prorate the loss between the two insurance companies. Summers further contends that American Bankers would be unjustly enriched if it were to receive the entire amount interpled by National, and that National should receive none of the funds as returning the money to National "would be to reward that company's lack of diligence." Consequently, Summers concludes that "fairness, if nothing else, would dictate that the balance be released to the Appellant."

¶25 Summers did not raise the issue of pro rata distribution at the District Court and we will not review a lower court's actions (or inaction) on an issue it was not given the opportunity to consider. Day v. Payne (1996), 280 Mont. 273, 277, 929 P.2d 864, 866. Furthermore, Summers has already received full payment on his single valid insurance policy, and pro rata distribution between National and American Bankers could have no effect on his award. Summers therefore has no interest in and no standing to argue for pro rata distribution between the two insurance companies.

¶26 4. Did the District Court abuse its discretion in denying American Bankers' motion for attorney fees?

¶27 A district court's grant or denial of attorney fees is a discretionary ruling which we review for abuse of discretion. Braach v. Graybeal, 1999 MT 234, ¶ 6, 296 Mont. 138, ¶ 6, 988 P.2d 761, ¶ 6. However, a district court's underlying determination that legal authority exists for an award of attorney fees is a conclusion of law which we review to determine whether the court interpreted the law correctly. *Braach*, ¶ 6. The general rule in Montana is that absent a statutory or contractual provision, attorney fees are not recoverable. Kennedy v. Dawson, 1999 MT 265, ¶ 52, 296 Mont. 430, ¶ 52, 989 P.2d 390, ¶ 52.

¶28 This Court has recognized an equitable exception to the general rule regarding attorney fees. In *Braach,* we clarified that:

> [A] court, under its equity powers, may award attorney fees to make an injured party whole. *Foy v. Anderson* (1978), 176 Mont. 507, 511-12, 580 P.2d 114, 116-17. Such awards are to be determined on a case-by-case basis. *Foy*, 176 Mont. at 511, 580 P.2d at 117. In subsequent cases addressing the *Foy* "equitable" exception, however, we have expressly limited its applicability to situations where a party has been forced to defend against a wholly frivolous or malicious action. *See, e.g., Youderian Const., Inc. v. Hall* (1997), 285 Mont. 1, 15, 945 P.2d 909, 917; *Newman v. Wittmer* (1996), 277 Mont. 1, 12, 917 P.2d 926, 933; *Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 429-30, 913 P.2d 641, 651; *Holmstrom Land Co. v. Hunter* (1979), 182 Mont. 43, 48-49, 595 P.2d 360, 363.

*Braach, ¶ 9.*

¶29 American Bankers asks this Court to adopt an expanded interpleader exception which

allows for an award of attorney fees if a party makes a "false claim." American Bankers contends that "[t]his case presents the perfect example of why this Court should recognize or apply such an exception. American Bankers is innocent of any wrongdoing . . . [and Summers] made what should be viewed as a false claim . . . ."

¶30 In its attempt to encourage us to adopt a new rule, American Bankers summarily states that it is innocent and that Summers' claim was false. American Bankers clarifies neither what constitutes a "false claim," nor why Summers' claim should be considered "false" and provides little analysis to convince this Court that Montana should adopt a new interpleader rule. We decline to adopt an interpleader exception which would allow the award of attorney fees when a "false" claim is made.

¶31 Finally, awarding attorney fees is a discretionary act. American Bankers has presented no argument and this Court sees no evidence that the District Court abused its discretion in expressly declining to apply either the equitable exception or a proposed interpleader exception in its denial of American Bankers' motion for attorney fees. Even if we were to adopt an exception, the awarding of attorney fees would continue to be discretionary. Reversal of a discretionary action by a district court requires proof of abuse of discretion. *Braach*, ¶ 6. American Bankers has presented no such proof of abuse in this case.

¶32 The District Court correctly interpreted the law in Montana when it determined that because Summers' claim was neither frivolous nor malicious, it would not award attorney fees to American Bankers. We therefore affirm the District Court's denial of American Bankers' motion for attorney fees.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER