Justice Jim Rice delivered the Opinion of the Court.
*1204 ***63 ¶1 Upon the District Court's certification of the issue pursuant to ***64 M. R. Civ. P. 54(b), Plaintiffs appeal the portion of the summary judgment order entered in favor of the Defendants, which denied Plaintiffs' claim that the four separate motor vehicle liability insurance coverages purchased by Robert and Sherle Warren (Warrens) from Progressive Direct Insurance Company (Progressive), should be "stacked" for application toward Plaintiffs' injury claims. Progressive appears in defense of the District Court's order. We affirm, addressing the following issue:
Did the District Court err by denying Plaintiffs' claim to stack the Defendants' motor vehicle liability insurance coverages for application to Plaintiffs' injury claims?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On January 8, 2015, while driving a 2000 GMC Sierra pick-up truck owned by his parents, Robert and Sherle Warren, eighteen-year-old Taylor Warren caused an accident resulting in injuries to Kenneth Cross, Henley Brady, and Roland Redfield. The truck was emblazed with "Grass Chopper" insignias on its door panels. Robert Warren owned and operated Grass Chopper, LLC as a sole proprietorship, but the truck was personally owned by the Warrens. For purposes of the insurance question before us in this appeal, liability for the accident is not disputed.
¶3 At the time of the accident, Taylor Warren was an insured driver, and the truck he was driving was an insured vehicle, under a Progressive motor vehicle insurance policy purchased by the Warrens. The policy covered all four members of the Warren family and included separate liability coverages for each of the Warrens' four vehicles. Each vehicle's coverage provided identical bodily injury liability coverage limits of $100,000 for each person or $300,000 for each accident, although the premiums charged to the Warrens were different for each vehicle: Cadillac Escalade-$267; Chevy Impala-$251; Pontiac Grand Am-$184; and GMC Sierra-$249.
¶4 Following the accident, Progressive paid the limit of liability coverage, $100,000 to each of the three Plaintiffs injured in the accident (or, $300,000 total for the accident), under the Warrens' coverage on the GMC Sierra pick-up truck involved in the accident. However, Plaintiffs claimed, as set forth in their March 2016 Amended Complaint, that they were entitled to recover based upon the combined, or stacked, liability coverage limits for all four of the Warrens' vehicles, thus totaling $400,000 per person or $1,200,000 for the accident. Progressive denied Plaintiffs' claim to stack the four liability coverages, arguing that Plaintiffs had received the limits of the ***65 liability coverage available to them under the Warrens' policy. The parties filed competing motions for summary judgment on the issue.
¶5 Noting that this Court had not ruled that third-party liability coverages were stackable, the District Court cited the rulings of federal courts applying Montana law to the issue, which had denied stacking. The court reasoned that Montana cases requiring stacking of first-party coverages were inapplicable because first-party and third-party coverages were fundamentally different, that only named insureds could stack their coverages, that third-party liability coverage was not personal and portable like first-party coverage, and that prohibition upon the stacking of third-party liability coverage did not render the Warrens' policy's coverage illusory. The District Court concluded that, "[b]ecause third party liability coverages are not stackable in Montana, § 33-23-203, MCA, Montana's anti-stacking statute, seems ill-suited when applied to an insurer that is attempting to avoid the stacking of third party liability limits," noting the Insurance Commissioner had promulgated instructions, pursuant to the statute, for filing of rates for stacking of first-party coverages, but not third-party coverages. Therefore, the District Court *1205 granted summary judgment to the Defendants.
¶6 Plaintiffs appeal.
STANDARD OF REVIEW
¶7 We review de novo a district court's ruling on summary judgment. City of Missoula v. Mt. Water Co ., 2016 MT 183, ¶ 19, 384 Mont. 193, 378 P.3d 1113.
DISCUSSION
¶8 Plaintiffs argue the District Court erred by failing to apply § 33-23-203, MCA, to the question of stacking the third-party liability coverage claimed here. Plaintiffs characterize the statute as having been changed by 2007 amendments from "an anti-stacking statute into a pro-stacking statute," which now requires coverages to be stacked unless the insurer takes affirmative action otherwise. The oft-amended provision now states, in relevant part:
(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:
...
***66 (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.
Section 33-23-203, MCA. Plaintiffs note the statute's term, "motor vehicle liability policy," is defined in § 33-23-204, MCA, and includes liability coverages, which vehicle owners are required to provide, in a minimum amount. See § 61-6-103, -301, MCA. In full, that definition states:
(2) "Motor vehicle liability policy" means a policy of automobile or motor vehicle insurance against liability required under Title 61, chapter 6, parts 1 and 3 , and all additional coverages included in or added to the policy by rider, endorsement, or otherwise, whether or not required under Title 61, including, without limitation, uninsured, underinsured, and medical payment coverages.
Section 33-23-204(2), MCA (emphasis added).
¶9 Thus, Plaintiffs argue the statute "applies to all automobile insurance coverages, including liability coverages," (emphasis in original), and that the District Court erred because "a Montana court may not properly reject, as somehow 'ill-suited,' application of this controlling Montana statute." Then, Plaintiffs contend Progressive failed to satisfy the requirements under subsection 203(1)(c) to foreclose stacking of coverages, because it did not charge a premium to "actuarially reflect the limiting of coverage separately to the vehicles covered by the policy," and file those premium rates "with the commissioner." See § 33-23-203(1)(c), MCA. Consequently, Plaintiffs argue the liability coverages on all four of Warrens' vehicles must be stacked.
¶10 Progressive answers that Plaintiffs' characterization of § 33-23-203, MCA, as a re-made, "pro-stacking" statute, is "overreaching," and argues the statute has always been an anti-stacking statute, and remains so. Noting the syntax of subsection 203(1)(c), "the limits of coverages ... may not be added together ... if ...," followed by rate and filing requirements, Progressive argues the plain language "provides one, non-exclusive.... constitutionally permissible" method for insurers to foreclose stacking in light of this Court's holding partially striking down the statute as unconstitutional in ***67 Hardy v. Progressive Specialty Ins. Co. , 2003 MT 85, ¶ 38, 315 Mont. 107, 67 P.3d 892. Noting this Court's precedent has never permitted "stacking for non-insureds seeking benefits under a policy they did not purchase," and the history of § 33-23-203, MCA, as an anti-stacking statute, Progressive contends "the only reasonable explanation is the Legislature intended to continue prohibiting stacking," and provided insurers "a way to prevent stacking that Montana common law *1206 would otherwise require," but "create[d] no rule requiring stacking." Progressive argues this interpretation is consistent with the statutory scheme in Title 61 setting mandatory minimum automobile coverage limits, because an automatic stacking rule would effectively mandate additional coverage for everyone with more than one insured vehicle. Progressive further offers its interpretation is consistent with the remaining provisions of § 33-23-203, MCA, which include the following:
(1)(a) the limits of insurance coverage available for any one accident are the limits specified for each coverage available under the policy insuring the motor vehicle involved in the accident;
(1)(b) if the motor vehicle involved in the accident is not insured under a policy, the limits of the insurance coverages available for any one accident are the highest limits of the coverages specified under one policy for one motor vehicle insured under that policy;
...
(2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, reductions of coverage, or subrogation clauses that are designed to prevent duplicate payments for the same element of loss under the motor vehicle liability policy ... or to prevent the adding together of insurance coverage limits in one policy or from more than one policy issued by the same company . [ (Emphasis added.) ]
¶11 Finally, Progressive argues that, even if the statute imposed a general stacking obligation, Progressive satisfied the statute's rate and filing requirements permitting it to foreclose stacking, as its premium rates were actuarially based upon limiting coverage per separate vehicle and were filed with the Insurance Commissioner. In reply, Plaintiffs contest Progressive's claim to have met the rate and filing requirements, but argue that, "[a]t the very least, this is a fact issue that should be resolved by the district court."
¶12 The parties' widely divergent constructions of the current version of the statute well illustrate the interpretational challenge that the law, with its combination of old and new parts, now presents. Likewise, the Dissent offers that the 2007 amendments gave the law "a new, peculiar effect." Dissenting Opinion, ¶ 38 (positing the statute now ***68 neither "affirmatively allows, nor precludes, stacking of [liability] coverages").[1] However, we need not resolve all of the parties' disputes over the statute's interpretation, and its designation as a pro-stacking or anti-stacking statute, to resolve the issue before us here. As noted above, "motor vehicle liability policy" is defined by § 33-23-204(2), MCA, as "a policy of automobile or motor vehicle insurance against liability required under Title 61, chapter 6, parts 1 and 3, and all additional coverages included in or added to the policy ... including, without limitation, uninsured, underinsured, and medical payment coverages." The Warrens' policy, which provided automobile liability coverage in a section entitled "Liability to Others," is encompassed within this definition and, therefore, the application of § 33-23-203, MCA, to motor vehicle liability policies necessarily includes application to their policy as well. Plaintiffs are correct that the statute must be the starting point of an analysis regarding the stacking of coverages under that policy. However, how the statute applies and, ultimately, whether stacking of the policy's coverages is required, are questions necessitating further analysis.
¶13 The statute's initial clause prefaces the statute with the condition, "[u ]nless a motor vehicle liability policy specifically provides *1207 otherwise , the limits of insurance coverage available under each part of the policy must be determined as follows ...". Section 33-23-203(1), MCA (emphasis added). Thus, the first question to be considered when applying the statute, which defers to the provisions of the subject policy, is whether the policy specifically determines the limits of coverage, that is, whether the coverage limits can be stacked.
¶14 Plaintiffs argue this Court interpreted the initial clause of § 33-23-203(1), MCA, in Christensen v. Mountain West Farm Bureau Mut. Ins. Co ., 2000 MT 378, 303 Mont. 493, 22 P.3d 624, to mean "unless the policy specifically permits stacking," and therefore, the ***69 clause only defers to policies that permit stacking, not to policies that prohibit it. However, in Christensen we were applying an earlier version of the statute that existed prior to our decision in Hardy partially invalidating it, and prior to the Legislature's revisions in 2007. As we explained about the version of the statute at issue in Christensen , " Section 33-23-203(1)(c), MCA, prohibits stacking regardless of the number of policies issued." Christensen , ¶ 39. It was therefore logical for the Court, in that context and without the necessity for broader analysis, to interpret the "provides otherwise" clause to refer to polices that "permit[ ] 'stacking.' " Christensen , ¶ 39. However, subsection 203(1)(c) has since been revised and, instead of providing a blanket prohibition on stacking, now provides a mechanism for determining whether coverage limits can be stacked, when viewed in the context of the statute as a whole. See § 33-23-203(1), (c), MCA ("[u]nless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows ," followed by the directive that coverages "may not be added together to determine the limits" if the process is undertaken whereby premium rates actuarially reflecting separate coverage per vehicle are filed with the Insurance Commissioner. (emphasis added)). Consequently, the initial clause of the statute now defers to insurance policies that provide alternate coverage stacking determinations to those provided by the statute.[2] ,[3] ***70 ¶15 The Warrens' policy contained a Declarations Page explaining the different coverages under the policy. On the Declarations Page, the bodily injury liability coverage limits, which would provide coverage for third-party claims such as Plaintiffs' here, were listed for each vehicle as "$100,000 each person/$300,000 each accident." The Declarations Page also set forth a general statement prohibiting stacking, stating, "[t]he policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle unless the policy contract or endorsements indicate otherwise." This prohibition on stacking was reinforced by specific terms within the policy itself, which stated, "[t]e limit of liability shown on the declarations page for liability coverage is the most we will pay regardless of the number of: 1) claims made; 2) covered autos; 3) insured persons; 4) lawsuits brought; 5) vehicles involved in the accident; or 6) premiums paid." Finally, the policy reiterated that, "[i]f *1208 a covered auto is involved in an accident, we will not pay more than the limit of liability applicable to the covered auto involved in the accident." Pursuant to the statute's delegation of the issue to the policy, Progressive's policy specifically and unambiguously provided that stacking of coverages would not be permitted.[4]
¶16 Plaintiffs offer several arguments challenging the enforceability of the anti-stacking provisions of Progressive's policy on public policy grounds. Citing cases requiring stacking of first-party coverages, such as uninsured, underinsured, and medical payment coverages, Plaintiffs assert that "[a]ny distinction between so-called 'first-party' and 'third-party' coverages is meaningless." However, there are fundamental differences in the coverages that must be carefully considered by the Court in determining whether to void, on public policy grounds, a policy provision governing the stacking of coverage limits. See Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co. , 2013 MT 208, ¶ 28, 371 Mont. 147, 305 P.3d 861 (citing "the necessity of conducting a critical analysis of Montana's public policy" before considering voiding an insurance policy provision).
¶17 First, this Court has required stacking of first-party coverages that we found to be "personal and portable," including uninsured ***71 motorist, underinsured motorist, and medical payment coverages. See Kemp v. Allstate Ins. Co. , 183 Mont. 526, 601 P.2d 20 (1979) (uninsured motorist coverage); Bennett v. State Farm Mut. Auto. Ins. Co ., 261 Mont. 386, 862 P.2d 1146 (1993) (underinsured motorist coverage); Ruckdaschel v. State Farm Mut. Auto. Ins. Co. , 285 Mont. 395, 948 P.2d 700 (1997) (medical payment coverage); Hardy (underinsured motorist coverage); State Farm Mut. Auto. Ins. Co. v. Gibson , 2007 MT 153, 337 Mont. 509, 163 P.3d 387 (medical payment coverage). We have found coverage to be "personal and portable" when it applies in "all circumstances," or, in other words, is applicable without regard to the ownership or use of a motor vehicle. Jacobson v. Implement Dealers Mut. Ins. Co. , 196 Mont. 542, 548, 640 P.2d 908, 912 (1982) ("They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick." (internal quotation omitted) (citation omitted)); see also Bennett , 261 Mont. at 389, 862 P.2d at 1148 (declaring coverage was "personal" because it "does not depend on the insured person occupying an insured vehicle."). Indeed, in Ruckdaschel , the insured was injured as a pedestrian when struck by a vehicle, and she was permitted to stack the medical payment coverages under the three motor vehicle policies she had purchased. Ruckdaschel , 285 Mont. at 399, 948 P.2d at 703.
¶18 Liability coverage is not likewise portable and applicable in "all circumstances." As Progressive's policy here provides, liability coverage is applicable only "with respect to an accident arising out of the ownership, maintenance, or use of an auto or trailer." The policy does not follow the insureds to provide coverage in other scenarios. Consequently, had Taylor Warren injured the Plaintiffs by a negligent act other than one "arising out of the ownership, maintenance, or use" of a vehicle, Progressive's policy would provide no liability coverage whatsoever for Plaintiffs' injury claims.
¶19 There is a limited portability characteristic of liability coverage in the sense that it follows the insureds when they are driving a substitute vehicle owned by another party, who is not insured under the subject policy, which is a requirement of statute. See § 61-6-103(2), MCA. However, coverage is still triggered by, and dependent upon, the use or involvement of a motor vehicle. "While an argument can be made that the coverage is in some sense personal because it follows the insured to a non-owned vehicle, liability coverage is nevertheless vehicle dependent. The liability coverage is not like a first-party or ***72 personal-accident policy such as uninsured motorist or medical pay coverages. ... Liability coverage results solely because a vehicle is involved." Slack v. Robinson , 134 N.M. 6, 71 P.3d 514, ¶ 25 (Ct. App. 2003). Although *1209 done in passing, we have recognized this distinction, noting, " Christensen involved liability coverage, as opposed to personal and portable coverages." Dempsey v. Allstate Ins. Co. , 2004 MT 391, ¶ 35, 325 Mont. 207, 104 P.3d 483.[5]
¶20 Because liability coverage is tied to the use or involvement of a motor vehicle, each additional insured vehicle presents a separate and additional risk: that by using it, another driver could cause an additional liability-incurring accident. Indeed, while an individual could not personally operate multiple insured vehicles at once, it is entirely possible for vehicles driven by multiple permissive drivers to be involved in different liability-creating accidents at the same time, or later within the policy period. Nonetheless, each vehicle's use triggers liability coverage for damages incurred in each separate accident, pursuant to the premium paid for that vehicle, securing a full coverage limit in the amount purchased and identified by the policy. Here, Progressive paid the liability coverage limit for the Warrens' GMC Sierra pickup involved in the accident, in the full amount stated on the Declarations Page, but also continued to assume the risk that full coverage limits on the Warrens' second, third, and fourth vehicles would be payable for claims as well, and thus, the separate premiums secured protection for the Warrens that was not illusory. A policy is illusory if it "defeat[s] coverage for which the insurer has received valuable consideration." Fisher , ¶ 33 (citing Bennett , 261 Mont. at 389, 862 P.2d at 1148 ); see also Gibson , ¶ 11 (citing Hardy , ¶ 40 ) ("[A] provision that defeats coverage for which valuable consideration has been received violates Montana public policy.").
¶21 The coverage here is contrasted with the underinsured coverage we found to be illusory in Hardy . There, the insured was injured in an automobile accident, and the $50,000 he recovered from the tortfeasor was insufficient to cover his damages. Hardy , ¶ 7. The insured had purchased underinsured motorist coverage, for which the declaration ***73 page of his policy stated limits of $50,000 per person and $100,000 per accident for his vehicles. Hardy , ¶ 9. However, the policy had definitional and offset provisions, including the requirement that UIM coverage was offset by amounts the insured recovered from the tortfeasor, that defeated the entirety of the policy's stated $50,000 limits of underinsured coverage, preventing any recovery. We held that the policy provisions "render[ed] coverage that Progressive promised to provide illusory, and defeat[ed] the insured's reasonable expectation." Hardy , ¶ 29. However, here, the premiums charged and paid represent consideration for separate liability coverages for each vehicle, to cover the additional risks of incurring liability for the separate use of those vehicles. Thus, "[t]he Policy provides the liability coverage for which the premium was paid." Fisher , ¶ 33.
¶22 Given that liability coverage is tied to a particular vehicle's use and is not personal and portable, that the policy here provided liability coverage that was not illusory, that the policy unambiguously and repeatedly stated that coverages on separate vehicles could not be stacked, as authorized by § 33-23-203(1), MCA, and that Progressive paid out the coverage limit for the Warrens' GMC Sierra as set forth on the Declaration Page, we cannot conclude it was reasonable to expect the policy would pay more. In particular, the Plaintiffs were strangers to the insurance contract, and, at most, could have reasonably expected only that a vehicle causing injury to them would carry liability insurance in the amounts required by Title 61-$25,000 per person and $50,000 per accident-as nothing would require an owner to acquire more. Here, those expectations were not violated because, not only did the Warrens satisfy Title 61 by carrying the mandated minimum coverage, they also purchased higher coverage limits.
¶23 We therefore conclude that public policy considerations do not require judicial voiding of the anti-stacking provisions of Progressive's policy as applied to liability *1210 coverage, and that the District Court did not err in granting summary judgment to Progressive. We concluded in Hardy that "an anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy." Hardy , ¶ 42. However, in contrast to the policy provisions that defeated the underinsured coverage at issue in Hardy , the liability coverage at issue here, as demonstrated above, does not permit Progressive to receive valuable consideration for coverage it does not provide.
¶24 This holding is consistent with the conclusion reached by many courts and commentators on the issue. See , generally, New Appleman ***74 on Insurance Law Library Edition § 63.16 (2018) ("The number of vehicles insured under a particular policy does not affect the liability limits available for ... third party liability claims arising from a single accident. There is no 'stacking' of coverages as there may when there are uninsured/underinsured claims."); Gordon v. Gordon , 41 P.3d 391, 394 (Okla. 2002) ("A variety of theories supporting the proposition that liability coverages should be stacked ha[ve] been advanced in the many opinions from around the country.... [and] have been uniformly rejected by the courts that have considered them."); Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Grp. , 15 S.W.3d 720, 724 (Ky. 1999) (rejecting stacking of liability coverages because the passenger plaintiff "did not pay for the coverage and had no reasonable expectation of collecting it"); Agnew v. Am. Family Mut. Ins. Co ., 150 Wis.2d 341, 441 N.W.2d 222, 227 (1989) (holding a third party cannot stack liability coverage from vehicles not involved in the accident); Houser v. Gilbert , 389 N.W.2d 626, 629 (N.D. 1986) (quoting Oarr v. Gov't Emps. Ins. Co. , 39 Md.App. 122, 383 A.2d 1112, 1117 (1978) ("[W]hen considering liability coverage 'the courts, with near uniformity, have held the first party coverage cases [on medical payment and uninsured motorist coverages] to be inapplicable and have found the policy to be unambiguous and to preclude "stacking" [of third party liability coverages].' ") ); Bagnal v. Foremost Ins. Grp. , No. 2:09-cv-1474-DCN, 2010 WL 755202 at *11, 2010 U.S. Dist. LEXIS 18567 at *30 (D.S.C. Mar. 2, 2010) (quoting Ruppe v. Auto-Owners Ins. Co. , 329 S.C. 402, 496 S.E.2d 631, 633 (1998) ) (" 'Liability coverage ... is limited to the particular vehicle for which it is purchased. The extent of liability coverage is thus statutorily defined by the amount of coverage on the insured vehicle and does not encompass coverage applicable to other vehicles.' "); Rando v. Cal. State Auto. Ass'n , 100 Nev. 310, 684 P.2d 501, 506 (1984) (adding "our imprimatur to the uniform conclusion reached by courts in other jurisdictions disallowing stacking [of liability policies]"). United States District Courts in Montana have reached the same conclusion, although employing a different rationale. See Morris v. Estate of Bishop No. CV 16-6-BU-SEH, 2016 WL 6534180 at *3, 2016 U.S. Dist. LEXIS 151912 at *6 (D. Mont. Nov. 2, 2016) (denying stacking for passenger plaintiffs because "[i]t is axiomatic that a liability insurance policy provides coverage only to [ ] 'insured person[s],' " and thus, plaintiffs are only entitled to seek third-party coverage); and Hecht v. Mt. W. Farm Bureau Mut. Ins. Co ., No. CV 15-40-GF-BMM, 2016 WL 837932, at *2, 2016 U.S. Dist. LEXIS 27384 at *6 (D. Mont. Mar. 3, 2016) (passenger plaintiff did not meet the policies' definition of "insured," so stacking "does not apply under Montana law."). ***75 ¶25 Affirmed.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.

The interpretational difficulties are underscored by the Dissent's conclusions that portions of the statute no longer have independent effect, Dissenting Opinion, ¶ 38, and that other portions remain unconstitutional in light of our decision in Hardy . Dissenting Opinion, ¶ 38 n.4. These conclusions may find resistance in principles of statutory construction, including that 1) it has "long been a fundamental rule that statutes should be interpreted as a whole, giving meaning to all , if possible." In re Marriage of Simpson , 2018 MT 281, ¶ 17, 393 Mont. 340, 430 P.3d 999 (citing Section 1-2-101, MCA) (emphasis added); and 2) when a statute determined to be unconstitutional by the Court is revisited and revised by the Legislature, it returns to the Court in subsequent litigation with the presumption of constitutionality. See Mead v. M.S.B., Inc ., 264 Mont. 465, 474, 872 P.2d 782, 788 (1994). Here, Plaintiffs do not challenge the constitutionality of any portion of § 33-23-203, MCA.

Plaintiffs' argument is inconsistent with their position that the 2007 legislative revisions changed the statute into a "pro-stacking" provision, because policies that "permit" stacking would no longer "provide otherwise" or treat stacking any differently than a statute that required stacking.

The Dissent likewise takes the position that the opening clause of the statute refers to policies that "allow stacking," but acknowledges the existence of such policies is "unlikely." Dissenting Opinion, ¶ 36. Indeed, in the Court's experience, we have yet to encounter an automobile policy that "provides," § 33-23-203(1), MCA, for the stacking of coverages. Construing the statute in such an unrealistic manner may run counter to the principle that "the Court must construe a statute as a whole in order to avoid absurd results." Engellant v. Engellant (In re Estate of Engellant) , 2017 MT 100, ¶ 11, 387 Mont. 313, 400 P.3d 218. This position may also be inconsistent with the Dissent's assessment that the statute now neither "allows, nor precludes, stacking."
The Dissent correctly concludes that the new premium rate filing process provides an administrative "safe harbor" for anti-stacking policy provisions. Dissenting Opinion, ¶ 38. By complying with the process, insurers can obtain, under color of law, an initial approval for an anti-stacking policy. However, while enhancing their legal standing, the filing process should not be misunderstood as insulating such policies from legal challenges on constitutional and public policy grounds, such as the public policy arguments made by the Plaintiffs here. On these issues, our precedent remains unchanged.

Plaintiffs do not contend the Progressive policy is ambiguous or its meaning is otherwise unclear.

The Dissent disagrees, and urges that third-party liability coverage "is no less personal and portable than first-party UM, UIM, and Med-Pay coverages," and thus should be stackable. Dissenting Opinion, ¶ 41. However, it cites no jurisprudential authority to support a recognition of third-party liability coverage as portable, and makes no effort to refute the authorities cited herein for the contrary position that automobile liability coverage operates differently.