No. 14386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

LUCETTA S. KEMP, Administratrix,
Representative and Successor in Interest
to KIM KAREL KEMP, Deceased,

Plaintiff and Respondent,

-vs-

ALLSTATE INSURANCE COMPANY, a Corporation,
and MITCHELL A. PRIM,

Defendants and Appellants.

---

Appeal from:  District Court of the Second Judicial District,
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellants:

Henningsen, Purcell & Genzberger, Butte, Montana
Mark Vucurovich argued and James E. Purcell appeared,
Butte, Montana

For Respondent:

Poore Law Firm, Butte, Montana
Urban Roth argued and James P. Harrington argued, Butte,
Montana

---

Submitted:  May 2, 1979

Decided:  AUG 1 1979

Filed:  1979

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Allstate Insurance Company appeals from a summary judgment entered in favor of the plaintiff in the District Court, Second Judicial District, Silver Bow County, applying Montana law to two insurance policies, one issued in New York and one issued in Vermont. The court "stacked" uninsured motorist coverages and construed other language in the policies to grant plaintiff a judgment of $200,000 against Allstate. Allstate contends that its liability under the policies is limited to $20,000.

On July 17, 1976, on Interstate 15, near the Montana Street Interchange in Butte, Montana, 19 year old Kim Karel Kemp was a passenger in a car which was struck from the rear by a vehicle operated by Mitchell A. Prim. Kemp was thrown from the automobile and sustained multiple injuries from which she died about an hour later.

The driver of the car in which Kim Kemp was a passenger, was a resident of Vermont, and the car was registered in Vermont. She had attended the University of Vermont for two years.

Kim Kemp's parents are residents of New York.

Mitchell A. Prim is a resident of Montana. It is conceded in this action that his negligence caused Kim Kemp's injuries. There is no doubt that Mitchell A. Prim was an uninsured motorist. Nevertheless, Kim Kemp's cause was in good hands. With Allstate as the issuing company, the vehicle in which Kim Kemp was a passenger was covered by an automobile insurance policy issued in Vermont, which policy included uninsured motorist coverage which Allstate concedes extended to Kemp. It also appears that Kim Kemp's parents, in New York, had a policy of insurance issued

by Allstate. The Kemp policy covered family cars registered in New York. As with the Vermont policy, the New York policy contained uninsured motorist protection and Allstate again concedes this protection extended to Kim Kemp. In addition, the New York policy contained mandatory "no-fault" personal injury protection required under New York law.

The policy issued in Vermont to the driver of the car in which Kemp was a passenger covered two vehicles, for each of which separate premiums for uninsured motorist protection were paid. The policy issued in New York to Kemp's parents covered at least three vehicles, for each of which separate premiums for uninsured motorist protection (as well as for "no-fault" protection) had been assessed and paid.

At the time of the accident giving rise to this appeal, Montana's uninsured motorist statute required coverage in limits for bodily injury death of $25,000 for one person, on all policies issued in Montana, unless such coverage was rejected in writing by the insured. Section 40-4403, R.C.M. 1947, now section 33-23-201 MCA. In New York and Vermont, however, the statutory amount was $10,000 for one person, and this figure was the limit stated in each of the policies involved here as to each vehicle covered. The limit of liability was $50,000 per person for no-fault coverage in the New York policy.

On December 29, 1976, a complaint was filed in the District Court, Silver Bow County, by the mother of Kim Karel Kemp, deceased, as administratrix, representative and successor in interest to the decedent, naming Allstate Insurance Company and Mitchell A. Prim as defendants, and stating claims in the nature of actions for wrongful death and survivorship. An amended complaint was later filed adding a claim for recovery under the "no-fault" provision of the New York policy.

-3-

On May 4, 1977, the District Court entered findings of fact, conclusions of law and judgment on behalf of the plaintiff against Mitchell A. Prim, upon evidence presented by the plaintiff in support of a default judgment. The judgment against Prim included $300,000, representing loss of future earnings and earning capacity, or in the words of the court, "extended economic loss in the sum of $300,000; general damages in the sum of $200,000; and punitive damages in the sum of $75,000 under section 93-2824, R.C.M. 1947;" additionally, the District Court entered judgment against Prim under section 93-2810, R.C.M. 1947, for the sum of $150,000, and for an additional punitive damages award in the sum of $75,000. The total judgment against Prim amounted to $800,000.

After the judgment against Prim was entered, plaintiff moved for summary judgment against Allstate on the issue of the amount of coverage Allstate was obligated to provide under the two policies. Plaintiffs motion requested the court to order that Montana law controlled; that the uninsured motorist coverages for all the vehicles in both policies could therefore be "stacked"; that the "no fault" coverage in the New York policy was applicable and could also be stacked for each of the three vehicles conceded to be included under the New York policy; and that therefore plaintiff was entitled to judgment in the sum of $200,000. The $200,000 figure breaks down as follows:

| | | |
|---|---|---|
| Vermont policy uninsured motorist coverage: | 2 cars at $10,000 = | $20,000 |
| New York policy uninsured motorist coverage: | 3 cars at $10,000 = | $30,000 |
| New York policy "no-fault" coverage: | 3 cars at $50,000 = | $150,000 |
| | TOTAL = | $200,000 |

On April 27, 1978, an order granting plaintiffs motion for summary judgment was entered by the District Court. It granted all the relief requested in plaintiff's motion for summary

-4-

judgment and awarded plaintiff the sum of $200,000, plus costs of the action. From that order of summary judgment, Allstate has brought this appeal.

Implicit in the summary judgment is that the applicable amount of uninsured motorist coverage is the $10,000 figure provided in Vermont and New York rather than the $25,000 figure in the Montana statute. Plaintiff has not cross-appealed or otherwise raised any objection to the order. Plaintiff does contend in her brief on appeal, that "should the court decide that by operation of law, the uninsured limits are expanded to $25,000.00 per automobile, then the sum of $125,000.00 would be due. . ." In other words, plaintiffs' ideal total recovery would be $275,000; five stacked uninsured motorist coverages of $25,000 and three stacked coverages of the $50,000 limit under the New York policy "no-fault" provision.

The threshhold issue we must address is whether the District Court erred in applying Montana law to the policies rather than applying New York law and Vermont law respectively. We conclude that it did not as to the uninsured motorist coverage.

Allstate maintains that this case is controlled by the rule of lex loci contractus. Accordingly, Allstate would have us apply Vermont law to the Vermont policy and New York law to the New York policy. Plaintiff, on the other hand, contends that lex loci contractus is an archaic doctrine which has lost its usefulness and should no longer be adhered to. Plaintiff urges us to adopt the revisionist position of the Restatement (Second) of Conflict of Laws §6, whereby choice of law questions are resolved by analyzing the "contXacts" and applying the law of the state with the most significant relationship to the parties, the transaction or occurrence with regard to the issues in dispute.

Neither party has correctly interpreted the affect in this case of section 13-712, R.C.M. 1947, now section 28-3-102 MCA, which provides:

"A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

That statute is not a declaration of the rule of lex loci contractus, as Allstate maintains. Rather, it is a declaration that generally a contract is to be interpreted under the rule of lex loci solutionis, the law of the place of performance. Under the statute, it is only when the contract does not indicate a place of performance that the interpretation would fall under the rule of lex loci contractus. In this situation, we look to the contract to determine if there is a place of performance indicated; if there is, the law of the place of performance controls under our statute, and there is no need to determine the law of the place where the contract was made, nor to adopt the "grouping of contacts", or "the center of gravity" approach to determine the applicable law.

To determine the place of performance, we turn to the respective insurance contracts. Under the uninsured motorist coverage, the following language appears:

"Allstate will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . including death . . . sustained by the insured, caused by accident arising out of the ownership, maintenance or use, of such uninsured automobile. . ."
(Emphasis added.)

The territory to which the uninsured motorist coverage applies is described thusly:

"This coverage applies only to accidents which occur on and after the effective date hereof, during the policy period, and outside the State of New York but within the United

-6-

States of America, its territories or possessions, or Canada." (Emphasis added.)

The payment of the loss by Allstate under the uninsured motorist coverage in this case comes under the following provision:

"Payment of Loss by Allstate. Any amount due hereunder is payable . . . (d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents; . . ." (Emphasis added.)

In this case, the person legally entitled to recover the damages against Prim is the plaintiff mother of the decedent, as administratrix, representative and successor in interest. Those damages have been fixed by the terms of a judgment entered in the District Court, Silver Bow County, Montana, which judgment has become final. When Allstate makes payment under the uninsured motorist coverage, subrogation in the ordinary sense is, of course, inapplicable; however, Allstate has taken care to provide in the terms of its uninsured motorist coverage, that the plaintiff here, having received such payments, will hold in trust for the benefit of Allstate, all rights of recovery she may have against Prim, who resides in Montana, and those responsible for him or his insurers, to the extent of the uninsured motorist payments made by Allstate.

Allstate's policies, under their terms, contemplate that an accident to which the uninsured motorist coverage will extend could occur in any state, including Montana. Allstate is obligated to pay all sums which the legal representative is legally entitled to recover as damages from Prim in this case. The legal representative has a judgment in Montana based on Montana law, determining the sums to which such representative is legally entitled to recover as damages. Montana, the place where the judgment was obtained, is thus the place of performance of Allstate's obligations under the uninsured motorist coverage. Norfolk and Western Railway Co. v. Hartford Acc. and Indem. Co. (N.D. Ind. 1976), 420 F.Supp. 92.

-7-

It is correctly stated in <u>Norfolk</u>, with respect to ordinary liability coverage, that:

> "It is important to note that, to an extent, the policy incorporates the substantive law of every state in which the insured's activities may take place. Within the category of compensatory damages, which the contract concededly covers, it could not be argued that only such forms of recovery as may be had in Missouri (the state in which the contract was made) are recoverable under the policy. The policy anticipates that the insurer will respond to whatever damages are made available by the applicable law of the state in which the insured's tort liability arises. In this context, it is important to observe that the insurance contract here has nationwide effect and that it is a standard contract issued by Hartford through diverse insurance agents across the country. . ." 420 F.Supp. at 94.

We therefore determine that under section 28-3-102 MCA, quoted previously, and under the terms of Allstate's policies, Montana law is to be applied in determining the rights of plaintiff with respect to the uninsured motorist coverage provided in the Allstate policies, and not the law of either Vermont or New York. This ruling is in harmony with the longstanding rule that the law of place of performance of an insurance contract controls as to its legal construction and effect, but the law of the place where the contract was made governs on questions of execution and validity, unless the terms of the contract provide otherwise, or circumstances indicate a different intention. Blair v. New York Life Ins. Co. (C.A. Cal. 1940), 104 P.2d 1075, 1078. It is also in harmony with the Restatement (Second) of Conflict of Laws, §206, which states that: ". . . issues relating to details of performance of a contract are determined by the local law of the place of performance."

We recognize that some states have held otherwise. For example, Davis v. State Farm Mutual Ins. Co. (Ore. 1973), **Fla. App.** 507 P.2d 9; Aetna Casualty and Surety Company v. Enright (Fla 1972), 258 So.2d 472; Breen v. Aetna Casualty and Surety Company (Ct. 1966), 220 Atl.2d 254; Eagle Star Ins. Co. v. Parker (Fl.App. 1978), 365 So.2d 780; and Government Emp. Ins. Co. v. Sheerin (N.Y.

-8-

1978), 410 N.Y.S.2d 641. Our conclusion here is based upon the plain meaning of section 28-3-102 MCA, which commands the application of the law of the place of performance.

In applying Montana law, we determine that the uninsured motorist coverages are to be "stacked"; that is, in policies of insurance which cover two or more vehicles, if a separate premium has been charged and collected on each vehicle for uninsured vehicle coverage, the insured is entitled to recover under uninsured motorist coverage sums found legally recoverable up to the aggregate sum of the coverages on all the motor vehicles so insured. Sullivan v. Doe (1972), 159 Mont. 50, 495 P.2d 193; Mountain West Farm Bureau v. Neal (1976), 169 Mont. 317, 547 P.2d 79; Chafee v. U.S. Fid. & Guar. Co., et al. (1979), ____ Mont. ____, 591 P.2d 1102, 36 St.Rep. 398.

Since there are five such vehicles involved here in the two policies (plaintiff contended at trial for one more vehicle, but that is not before us here) and since the policies provided for $10,000 uninsured motorist on each vehicle, and since plaintiff's judgment exceeds the aggregate sum of such coverage, plaintiff is entitled to $50,000 under the uninsured motorist policy provisions.

Plaintiff has also contended in briefs, that since Montana's uninsured motorist coverage statute, section 33-23-201 MCA, requires limits for bodily injury or death in at least the sum of $25,000, that we should also decide that in conformance with Montana law the New York and Vermont coverages should be construed to provide limits of $25,000 uninsured motorist coverage on each vehicle covered, and thereafter "stacked", to make a total recovery to the plaintiff on this coverage of $125,000.

We do not find that the Montana law requires such a result. Montana's uninsured motorist statute is not mandatory, in the

-9-

sense that the insured has the right to reject in writing such coverage in policies issued in Montana. Section 33-23-201(2) MCA. Moreover, neither the New York policy nor the Vermont policy was certified under either sections 61-6-133 MCA or 61-6-134 MCA as proof of financial responsibility under Montana law, nor does it appear that the insured had made himself subject to such a financial requirement. In that situation, we have no basis to raise the uninsured motorist coverage limits to $25,000, instead of the New York and Vermont limits of $10,000 for such coverage. See American Hardware Mut. Ins. Co. v. Bradley (N.J. Super. Ct. App. Div. 1977), 379 A.2d 53.

A final issue involved in this appeal goes to Allstate's liability under the "no-fault" provisions of the New York policy. That coverage is provided for in parts two and three issued to the Kemp's. Part two is entitled "Coverage VA-Mandatory Personal Injury Protection." Under that heading, the following pertinent language appears:

> "Allstate will pay first party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle. This coverage applies only to motor vehicle accidents which occur during the policy period and within the State of New York."

That section also defines the term "Basic Economic Loss":

> "Basic economic loss shall consist of medical expense, work loss and other expense. Basic economic loss shall not include any loss sustained on account of death. Basic economic loss of each eligible injured person on account of any single accident shall not exceed the amount shown in the declarations." (Emphasis added.)

Part three of the policy is captioned "Coverage VB-Additional Personal Injury Protection." Under that heading, it is provided that "[a]ll of the terms and provisions applicable to Coverage VA shall also apply to Coverage VB except as modified herein." VB coverage includes the following:

-10-

"Allstate will pay additional first-party benefits to reimburse for extended economic loss on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle and sustained by:

"(a)   a named insured or any relative;

"(b)   any other person occupying a motor vehicle owned by the named insured; and

"(c)   any other person occupying a motor vehicle (other than a public or livery conveyance) operated by the named insured or any relative.

"Such coverage shall not apply to an accident arising out of the use or operation of a motor vehicle owned by the named insured or any relative with regard to which additional personal injury protection has not been purchased during the policy period; provided, however, that this coverage shall apply only if Coverage VB is shown in the declarations and a specific premium is charged therefor." (Emphasis added.)

The VB section includes a definition of the term "[e]xtended economic loss":

"(a) basic economic loss sustained on account of an accident occurring in any state other than the State of New York or in any Province of Canada;

"(b)   the difference between

"(i)   basic economic loss; and

"(ii)   basic economic loss recomputed in accordance with the time and dollar limits set out in the declarations; and

"(c)   all reasonable and necessary funeral expenses up to the limit set out in the declarations."   (Emphasis added.)

Kim Kemp's parents had paid a separate premium for both VA and VB coverage for at least three cars under the New York policy involved here.  The declaration sheet attached to the policy indicates that the limits of liability under the VB coverage are $50,000 each person, work loss maximum $1,000 per month, other expenses maximum $25 per day, and funeral expenses maximum $2,000.

Allstate contends that the VB coverage is not applicable here because "basic economic loss" as defined in the policy does not include any loss sustained on account of death, and

-11-

"Extended economic loss" under the VB coverage incorporates the definition of basic economic loss. Plaintiff argues that the definition of basic economic loss is modified by the VB coverage to include <u>any</u> loss sustained on account of an accident occurring outside New York, and that "basic economic loss" is defined by Montana law as including losses covered under Montana's survivorship statute, section 93-2824, R.C.M. 1947, now section 27-1-501 MCA.

In the District Court, plaintiff's argument prevailed. The order of summary judgment appealed from interpreted the term "basic economic loss" to mean "loss of future earnings or earning capacity". Since the court had previously ruled in the default judgment against Mitchell A. Prim that plaintiff was entitled to $300,000 as damages for those elements in the survivorship claim, the summary judgment ordered that the entire VB coverage was applicable, stacked it for the vehicles, and awarded $150,000 in VB coverage. We do not find plaintiff's contentions so convincing.

The nub of plaintiff's argument is that "basic economic loss" equates with damages under our survivorship statute. We do not find this to be so. The term "basic economic loss" derives from language peculiar to the New York "no-fault" law. The Insurance Law of the State of New York (§671, subd. 1). It is not a term of art for which Montana has a controlling definition, statutory or otherwise. A fair reading of the terms of the policy and the New York statute indicates that the District Court erred in its award. The "Coverage VB-Additional Personal Injury Protection" clearly incorporates the definition of "basic economic loss" from Coverage VA, which does not include loss sustained on account of death. Plaintiff cannot recover any damages on the survivorship claim under the VB coverage.

The VB coverage does, however, extend to certain other elements of damages for which Allstate is contractually obligated. Since it incorporates the definition of "basic economic loss" from coverage VA, it necessarily includes the "medical expense, work loss and other expense" entailed in that definition, to the extent any such items of damages accrued prior to the insured's death. Further, paragraph (c) under "Extended Economic Loss" in the VB coverage contemplates reasonable and necessary funeral expenses. Therefore, Allstate is liable to plaintiff under the policy provisions for whatever sums have been incurred in these areas up to the applicable policy limits set forth in the declarations. It is clear from the record that these sums will not exceed nor even approach $50,000, and we therefore need not address the issue of stacking the "no-fault" coverages.

The District Court order of summary judgment awarding plaintiff $200,000 is reversed. The cause is remanded with instructions to enter an order of summary judgment for plaintiff against Allstate as follows:

| | | |
|---|---|---|
| Uninsured Motorist Coverage - Vermont Policy - (stacked for 2 vehicles; 2 x $10,000) | | $20,000 |
| Uninsured Motorist Coverage - New York Policy - (stacked for 3 vehicles; 3 x $10,000) | | $30,000 |
| "No fault" coverage under section VB - New York Policy (to the extent of declarations) | a.) | medical expenses incurred prior to death, if any; |
| | b.) | other expenses, if any; |
| | c.) | funeral expenses. |

In closing we note that there is a possible peripheral issue involved here which has not been addressed in this opinion. The question is whether under New York law an insured whose damages exceed the applicable limits is allowed recovery under

-13-

both uninsured motorist coverage and no fault coverage. New York case law is clear that such recovery is proper. Adams v. Government Emp. Ins. Co. (1976), 52 App. Div. 2d 118, 383 N.Y.S.2d 319; Rabideau v. Aetna Cas. & Sur. Co. (1976), 54 App. Div. 2d 1055, 388 N.Y.S.2d 719. There is thus no prohibited "double-recovery" here in allowing plaintiff the limits of uninsured motorist coverage together with whatever sums are due for the enumerated items provided for under the New York policy's VB "no-fault" provisions.

Affirmed in part and reversed and remanded in part. No costs to either party.

_____John C. Sheehy_____
Justice

We Concur:

_____
Chief Justice

_____Gene B. Daly_____

_____John Conway Harrison_____

_____Daniel J. Shea_____
Justices

Mr. Chief Justice Frank I. Haswell concurs in part and dissents in part and will file his dissent later.

-14-