No. 02-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 102

CHARLES MITCHELL,

　　　　Plaintiff and Appellant,

　　v.

STATE FARM INSURANCE COMPANY,

　　　　Defendant and Respondent.

APPEAL FROM:　　District Court of the Fourth Judicial District,
　　　　　　　　In and for the County of Missoula, Cause No. DV-00-586,
　　　　　　　　The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Steve Fletcher, Bulman Law Associates, P.L.L.P., Missoula, Montana

　　　　For Respondent:

　　　　　　Gary Kalkstein, C. J. Johnson, Kalkstein Law Firm, P.C., Missoula, Montana

　　　　　　　　　　　　　　Submitted on Briefs:　April 3, 2003

　　　　　　　　　　　　　　Decided:　April 24, 2003

Filed:

_____
　　　　　　　　　　Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The Appellant, Charles Mitchell, filed a complaint for declaratory judgment with the District Court for the Fourth Judicial District in Missoula County.  The complaint requested that the District Court determine that he was entitled to coverage from State Farm insurance policies pursuant to which he was an "insured." Both parties filed motions for summary judgment and oral argument was held.  Following oral argument, the District Court issued an Opinion, Order and Declaratory Judgment in favor of State Farm. Mitchell appeals from that order.  We reverse the judgment of the District Court.

¶2     The dispositive issues on appeal are:

¶3     1.  Did the District Court err when it applied California law to determine whether Mitchell was entitled to underinsured motorist coverage?

¶4     2.  Did the District Court err when it concluded that the limitations in the State Farm policies do not violate public policy?

FACTUAL AND PROCEDURAL BACKGROUND

¶5     On July 27, 1998, the Appellant, Charles Mitchell, was injured while a passenger in a vehicle driven by Brook Tebb and insured by Glen and Linda Haas.  Mitchell alleged that he suffered approximately $25,000 in medical expenses and alleged damages from loss of wages, for pain and suffering, and for future medical expenses. Mitchell's claim for damages related to pain and suffering, wage loss and future medical expenses, along with the seriousness of Mitchell's injuries remain disputed by State Farm.  Following the accident,

2

Mitchell settled with Farmer's Insurance, the insurer of the Haas vehicle, for the vehicle's policy limit of $50,000.

¶6 Mitchell is insured by his parents' State Farm insurance policies. Approximately $25,000 of Mitchell's medical bills were covered by his parents' medical expenses coverage. Mitchell's parents reside in California, and insure five vehicles through State Farm, which are registered, owned, operated, and garaged in California. A separate premium was paid for uninsured motorist coverage for each vehicle. The insurance policy declarations pages indicate that uninsured motorist coverage in the amount of $30,000 per person and $60,000 per accident is provided for four vehicles, and coverage in the amount of $50,000 per person and $100,000 per accident is provided for the fifth vehicle. Separate premiums were charged for each coverage.

¶7 Each policy provides in part:

> **Where coverage applies**:
> The coverages you choose apply:
> 1. in the United States of America, its territories and possessions, or Canada; or
> 2. while the insured vehicle is being shipped between their ports.
>
> . . . .
>
> **UNINSURED MOTOR VEHICLE - COVERAGE U**
> You have this coverage if "U" appears in the "Coverages" space on the declarations page.
> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be caused by an accident arising out of the operation, maintenance or use of an **uninsured motor vehicle**.

3

IF THE DAMAGES ARE CAUSED BY AN *UNDERINSURED MOTOR VEHICLE* THERE IS NO COVERAGE UNTIL:

1. THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENT TO OTHER *PERSONS*:

. . . .

*Uninsured Motor Vehicle* under coverage U - means:

1. A land motor vehicle, the ownership, maintenance or use of which is:
(a) not insured or bonded for bodily injury liability at the time of the accident; or
(b) insured or bonded for bodily injury liability at the time of the accident; but
    (1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged . . .
2. an *underinsured motor vehicle* as defined [in this provision] . . . .

. . . .

*Underinsured Motor Vehicle* - means a land motor vehicle, the ownership, maintenance or use of which is:

1. insured or bonded for bodily injury liability at the time of the accident, but
2. the limits of the liability are less than the limits of liability of this coverage.

. . . .

**Limits of Liability Under Coverage U**

4. The limits of liability are not increased because:
(a) more than one vehicle is insured under this policy. . . .

. . . .

6. If the damages are caused by an *underinsured motor vehicle*, the most we pay will be the lesser of:
(a) the difference between the limits of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

4

(b)    the difference between the amount of the ***insured's*** damages for ***bodily injury***, and the amount paid to the ***insured*** by or for any ***person*** or organization who is or may be held legally liable for the ***bodily injury***.

**If There Is Other Uninsured Motor Vehicle Coverage:**

4.    If the ***insured*** sustains ***bodily injury*** while ***occupying*** a vehicle not owned by ***you, your spouse*** or any ***relative*** and:

(a)    such vehicle is not described on the declarations page of another policy providing uninsured motor vehicle coverage; and

(b)    its driver is:

(1)    ***you, your spouse*** or any **relative**, or

(2)    any other ***person*** not insured under another such policy.

then

(a)    the total limits of liability under all applicable policies issued by us shall not exceed that of the one with the highest limit of liability. . . .

We note that, by the terms of the policies, the uninsured motorist provision includes underinsured motorist coverage.

¶8    State Farm denied Mitchell's request for underinsured coverage. It reasoned that the Haas vehicle's $50,000 liability coverage matched the highest single uninsured motorist coverage and, therefore, it was not "underinsured" pursuant to the underinsured motorist definition.

¶9    Mitchell requested that the District Court determine that State Farm's denial of coverage violated public policy and determine the amount of coverage he was entitled to receive pursuant to the policies. The parties filed motions for summary judgement and oral argument was held on January 25, 2001.

¶10    The District Court issued its Opinion, Order and Declaratory Judgement on November 14, 2001. The District Court was asked to address the following issues: 1) Is the definition

of "underinsured motorist" coverage in the California State Farm Policy invalid as against Montana public policy; 2) If Mitchell is entitled to underinsured motorist coverage from his parents' State Farm policy, is he allowed to stack the underinsured motorist coverage provided by all five of his parents' vehicles; and 3) If Mitchell is not permitted to stack the five coverages, is he entitled to recover $50,000 based on the highest vehicle coverage provided to his parents for one vehicle?

¶11   Before addressing the specific issues raised by Mitchell, the District Court determined that California, rather than Montana law controlled.   The District Court concluded that, according to California law, the policies were valid and that Mitchell was not entitled to underinsured motorist coverage from his parents' State Farm insurance policies.   It, therefore, awarded summary judgment to State Farm.

## STANDARD OF REVIEW

¶12   This Court reviews an appeal of summary judgment *de novo*.  *Motarie v. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156.  We apply the same Rule 56, M.R.Civ.P., criteria applied by the district court.  *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.  Rule 56, M.R.Civ.P., provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶13   The party moving for summary judgment has the initial burden of establishing the absence of genuine issues of material fact.  *Bruner*, 272 Mont. at 264, 900 P.2d at 903.  If

6

that burden is met, the burden shifts to the nonmoving party to raise a genuine issue of material fact by more than mere denial or speculation. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. Once a court determines that no genuine factual issues exist, it must determine whether the moving party is entitled to judgment as a matter of law. *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903. This Court reviews the legal conclusions made by a district court to determine if they are correct. *Bruner,* 272 Mont. at 265, 900 P.2d at 903.

DISCUSSION

ISSUE 1

¶14 Did the District Court err when it applied California law to determine whether Mitchell was entitled to underinsured motorist coverage?

¶15 Mitchell contends that the District Court erred when it concluded that California law governed whether he was entitled to underinsured motorist coverage. He maintains that Restatement (Second) of Conflict of Laws § 6(1) (1971), requires that a court follow § 28-3-102, MCA, where, as in this case, there is a conflict between California law and Montana law.

¶16 Generally, conflicts between an insured and an insurer are resolved by contract law rather than tort law. *State Farm v. Estate of Braun* (1990), 243 Mont. 125, 127, 793 P.2d 253, 254. However, the analysis used to determine which state's law applies to a particular case is the same for contract and tort law. *Phillips v. General Motors Corp.*, 2000 MT 55, ¶ 23, 298 Mont. 438, ¶ 23, 995 P.2d 1002, ¶ 23. Consistent with our decisions in *Phillips* and *Casarotto v. Lombardi* (1994), 268 Mont. 369, 886 P.2d 931, the District Court applied

7

the Restatement (Second) of Conflict of Laws, when it determined California law applied to this case.

¶17    While the court was correct when it concluded that conflicts of law are resolved pursuant to the Restatement, its application of the Restatement was incorrect. *Phillips* represents this Court's attempt to avoid conclusory application of the Restatement, a practice we recognized as an error in other appellate courts. *Phillips,* ¶ 26. Consequently, we approached the criteria in a careful, step-by-step fashion, to avoid misapplication of the law. *Phillips*, ¶ 26. We incorporate the same careful procedure to the instant case and reach a different result than the District Court.

¶18    Restatement (Second) Conflict of Laws provides:

> § 188.  Law Governing in Absence of Effective Choice of Law by the Parties
> (1)    The rights and the duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6. . . .

> § 193.  Contracts of Fire, Surety or Casualty Insurance
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

> § 6.  Choice-of-Law Principles
> (1)    A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2)    Where there is no such directive, the factors relevant to the choice of law include . . . .

8

The District Court began its analysis with § 6(2) and did not ascertain whether Montana law addressed the choice of law concerning Mitchell's State Farm policy pursuant to § 6(1).

¶19    Section 28-3-102, MCA, provides:

> **What law and usage to govern interpretation.** A contract is to be interpreted according to the law in usage where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

The policies contemplate that State Farm will be required to perform its contractual duty anywhere in the United States: "The coverages you choose apply (1) in the United States of America . . . ." Therefore, we conclude that Montana was an anticipated place of performance. Pursuant to § 28-3-102, MCA, Montana law applies to the instant case if Montana is the actual place of performance.

¶20    In general, unless the terms of the insurance contract provide otherwise, the law of the place of performance controls a contract's legal construction and effect *Kemp v. Allstate Ins. Co.* (1979), 183 Mont. 526, 533, 601 P.2d 20, 24. We have held that where an insurance contract designates the place of performance to be any state where a claim arises, performance occurs where the insured obtains judgment. *Kemp,* 183 Mont. at 532-33, 601 P.2d at 23. It logically follows, that the place of performance is also the place where an insured is entitled to receive benefits, has incurred accident related expenses, or is entitled to judgment.

¶21    State Farm maintains that *Kemp* has limited precedential value following this Court's adoption of the Restatement. However, the Restatement requires a court to first look to

9

relevant state law when determining applicable law. Restatement (Second) Conflict of Laws § 6(1). Section 28-3-102, MCA, provides that when a contract indicates the place of performance, the law of the state where performance occurs should be applied. In *Kemp* we determined what constitutes place of performance pursuant to § 28-3-102, MCA. We hold that the adoption of the Restatement does not change *Kemp's* applicability in cases where a court is asked to determine the place of performance pursuant to § 28-3-102, MCA.

¶22 Montana is the place of performance pursuant to Mitchell's policies because Mitchell was working and living in Montana at the time of the accident; the underinsured tortfeasor's vehicle was insured in Montana; Mitchell's medical expenses were incurred in Montana; Mitchell settled with the Haas' insurers for the policy limit giving rise to the underinsured motorist claim in Montana; and judgment concerning the accident will be rendered and paid in Montana. *See Kemp*, 183 Mont. at 532-33, 601 P.2d at 23-24.

¶23 We conclude that the District Court was incorrect when it held that California law applies to the instant case. Whether or not Mitchell is entitled to recover damages pursuant to the State Farm policy is a matter of Montana law.

## ISSUE 2

¶24 Did the District Court err when it concluded that the limitations in the State Farm policies do not violate public policy?

¶25 Mitchell contends that the definition of underinsured motorist, the Limits of Liability provision, and the Other Insurance provision in his State Farm policies contradict the amount

of coverage indicated by the declarations pages. State Farm contends that the terms of the policies are clear and unambiguous and must be enforced as written.

¶26 When we look at an insurance contract for purpose and intent "we [will] examine the contract as a whole, giving no special deference to any specific clause." *Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 25, 289 Mont. 312, ¶ 25, 961 P.2d 114, ¶ 25. The terms and words used in an insurance contract are to be given their usual meaning and construed using common sense. *Dakota Fire Ins. Co. v. Oie*, 1998 MT 288, ¶ 5, 291 Mont. 486, ¶ 5, 968 P.2d 1126, ¶ 5. Any ambiguity in an insurance policy must be construed in favor of the insured, and in favor of extending coverage. *Holeman*, ¶ 25. An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations. *Holeman,* ¶ 25. Whether an ambiguity exists is determined through the eyes of "a consumer with average intelligence but not trained in the law or insurance business." *Holeman,* ¶ 25.

¶27 The policies' declarations pages indicate that Mitchell paid five separate premiums for $30,000 of uninsured motorist coverage on four vehicles, and $50,000 of uninsured motorist coverage on one vehicle. The uninsured motorist coverage pledges that it will pay damages that the insured is legally entitled to recover from a tortfeasor for bodily injury. Uninsured coverage includes coverage for damages by an underinsured motorist. However, according to the underinsured motorist definition, coverage is only available if the tortfeasor's liability insurance limit is less than the single highest coverage purchased by Mitchell. Moreover, underinsured motorist coverage is only available where the tortfeasor's liability coverage

11

does not satisfy the mandatory minimum liability limit for the state where the insured's vehicle is primarily garaged. Finally, the underinsured coverage is offset by the amount payable to the insured by any person or organization held legally liable.

¶28    In all cases where the tortfeasor's liability coverage is equal to or more than $50,000 Mitchell can recover nothing.  If Mitchell is injured by a tortfeasor who satisfies the underinsured motorist definition in Montana, his recovery will automatically be offset by $25,000. Moreover, underinsured portions of the four $30,000 uninsured motorist coverages purchased are rendered valueless by the anti-stacking provision.  These provisions contradict the expectation created by the declarations pages that five coverages were paid for and are available.  Consequently, we conclude that the State Farm policies are subject to more than one interpretation and, therefore, ambiguous.

¶29    Mitchell contends that the underinsured motorist definition, the offset provision and the anti-stacking provision all violate Montana public policy.  State Farm responds that Montana public policy permits limitations and exclusions in optional insurance coverages. State Farm also maintains that the legislature established Montana public policy with regard to stacking pursuant to § 33-23-203, MCA, which allows insurers to avoid stacking regardless of the premiums charged.

Underinsured Motorist Definition

¶30    Mitchell maintains that the limits comparison underinsured motorist definition contravenes the insured's reasonable expectation that coverage will be available in the event that a tortfeasor does not provide adequate indemnification.  State Farm responds that

12

Montana public policy does not prohibit limiting underinsured motorist coverage and, therefore, the limits comparison underinsured motorist definition is valid.

¶31 Initially, we note that the combined uninsured/underinsured motorist coverage provision lends itself to confusion. To determine whether the underinsured motorist definition is valid in Montana, we consider the underinsured motorist definition independently. Montana public policy considerations that favor adequate compensation for accident victims apply to underinsured motorist coverage. *Bennett v. State Farm Mut. Auto. Ins. Co.* (1993), 262 Mont. 386, 389, 862 P.2d 1146, 1149. Moreover, Montana law recognizes that an insurance consumer reasonably expects that underinsured motorist coverage will provide *additional* coverage when the insured's damages exceed what is available from the tortfeasor. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, __ P.3d __; *Bennett*, 261 Mont. at 389, 862 P.2d at 1149.

¶32 In *Transamerica Ins. Group v. Osborn* (1986 D.Mont.), 627 F. Supp. 1405, 1406-407, an underinsured motor vehicle was defined as: "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less that the limit of liability for this coverage." The United States District Court concluded that the underinsured motorist definition transgressed the reasonable expectation created by the declarations page representation that $50,000 of *additional* coverage would be available if Osborn's damages exceeded the bodily injury liability available from the tortfeasor. *Osborn*, 627 F.Supp. at 1412.

13

¶33     In *Hardy v. Progressive Specialty Ins. Co.*, we held that a limits comparison underinsured motorist definition violated the insurance consumer's reasonable expectation that underinsured motorist coverage provided additional coverage.  The definition provided:

> "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Underinsured Motorist Coverage shown on the Declarations Page.

*Hardy*, ¶ 8.  Pursuant to the common law definition of underinsured motorist coverage, the declarations page, and the consumer's reasonable expectation, we concluded that the underinsured motorist coverage provided indemnification in the event that the tortfeasor's liability was insufficient to compensate the insured for his damages.  We held that the underinsured motorist definition in that policy was void.   *Hardy*, ¶ 29.

¶34     We acknowledge that the Mitchell policy is identical to neither the policy in the *Hardy* nor the policy in *Osborn*.  In *Hardy* and *Osborn*, a separate premium was paid for underinsured motorist coverage that was provided independently of the uninsured motorist coverage.  The underinsured motorist coverage in Mitchell's policies are a part of the uninsured motorist coverage, no separate premium was paid for underinsured motorist coverage, and the declarations pages do not list underinsured motorist coverage separately.  However, those distinctions do not alter the consumer's reasonable expectation that underinsured motorist coverage provides *additional* coverage, up to the coverage limit, which is expressed on the declarations page in terms of "uninsured" coverage, when the tortfeasor provides insufficient liability coverage.  The underinsured motorist definition in Mitchell's

policies contravenes that expectation. Consequently, we conclude that the underinsured motorist definition violates Montana public policy.

Offset Provision

¶35     The offset provision violates public policy on separate grounds. A case in point is *Grier v. Nationwide Mut. Ins. Co.* (1991), 248 Mont. 457, 812 P.2d 347, where we considered whether a provision that permitted "underinsured" motorist coverage to be offset by the amount the insured recovered from a tortfeasor violated public policy. In *Grier*, the policy defined underinsured motorist coverage as part of the uninsured motorist coverage; no independent underinsured motorist provision was included in the policy; no separate premium was charged for underinsured motorist coverage; and the declarations page only indicated that uninsured motorist coverage was provided. *Grier*, 248 Mont. at 459, 812 P.2d at 349. Based on these characteristics, we concluded that the underinsured coverage in the policy was in fact part of the mandatory uninsured motorist coverage. *Grier*, 248 Mont. at 459, 812 P.2d at 349. Montana public policy prohibits offsets of mandatory coverage. Therefore, the underinsured motorist coverage offset clause violated Montana public policy and was void. *Grier*, 248 Mont. at 459, 812 P.2d at 349.

¶36     The Mitchell policies are nearly identical to the policy in *Grier*. The policies define underinsured motorist as part of uninsured motorist coverage; they do not have an independent underinsured motorist provision; no separate premium was charged for underinsured motorist coverage; and the declarations pages only indicate that uninsured

15

coverage is provided by each policy. Consistent with our holding in *Grier*, we conclude that the offset provisions violate Montana public policy.

Anti-Stacking Provision

¶37 Finally, we consider whether the anti-stacking provision in the State Farm policies violates Montana public policy. Mitchell contends that the anti-stacking provision violates public policy because it permits State Farm to charge a premium for coverage that is defeated by the provisions of the policy. State Farm counters that § 33-23-203, MCA, expressly permits the anti-stacking provision.

¶38 We recently held that § 33-23-203, MCA, is unconstitutional to the extent that it allows an insurance company to charge a premium for illusory coverage. *Hardy*, ¶ 38. The anti-stacking provision in this case permits State Farm to charge premiums for five separate uninsured motorist coverages in spite of the fact that the anti-stacking provision only permits Mitchell to recover for one coverage. Therefore, § 33-23-203, MCA, violates substantive due process, *see Hardy*, ¶ 38, and is not controlling. In the absence of a legislative directive, we must review the anti-stacking provision in light of this Court's proclamation of public policy.

¶39 An insurance policy cannot include provisions that defeat coverage for which valuable consideration was received. *Bennett*, 261 Mont. at 389, 862 P.2d at 1148. Pursuant to Montana case law, uninsured motorist coverage may be stacked when separate premiums are charged for coverage on more than one vehicle. *Chaffee v. U.S. Fid. & Guar. Co.* (1979), 181 Mont. 1, 6, 591 P.2d 1102, 1105. In short, an anti-stacking provision that permits an

16

insurer to receive valuable consideration by charging premiums for coverage that is not provided, violates Montana public policy. Any limitations on coverage must be reflected in the premium charged.

¶40 Moreover, uninsured motorist coverage is both personal and portable. *Jacobson v. Implement Dealers Mut. Ins. Co.* (1982), 196 Mont. 542, 547-48, 640 P.2d 908, 912. In *Hardy*, the declarations page indicated that four coverages had been purchased. However, the anti-stacking provision only permitted the insured to recover one amount of coverage. We held that the anti-stacking provision defeated the insurance consumer's reasonable expectation that multiple coverages could be aggregated because it destroyed the personal and portable nature of underinsured motorist coverage. *Hardy*, ¶¶ 44-45.

¶41 State Farm charged five premiums for five uninsured motorist coverages. However, Mitchell can only receive one amount of coverage.

¶42 In *Hardy*, ¶ 45, we concluded that limitations of this nature violated the consumer's reasonable expectation that underinsured motorist coverage was personal and portable. The same holds true for uninsured motorist coverage. The anti-stacking provision in the instant policies contravene Mitchell's reasonable expectation that uninsured motorist coverage is personal and portable. Consequently, we conclude that the anti-stacking provision in Mitchell's policies violate the public policy of this state and is void.

¶43 We conclude that Montana law applies to this case. Pursuant to Montana law, we conclude that the District Court was incorrect when it held that the underinsured motorist definition in the State Farm policies was valid in Montana. Furthermore, we conclude that

the District Court was incorrect when it held that Montana public policy permitted the anti-stacking provision in the State Farm policies.

¶44    Based upon the foregoing conclusions, we reverse the judgement on the District Court and remand this case to the District Court for further proceedings consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER

Justice Jim Rice concurring in part and dissenting in part.

¶45     I concur with the Court's holding in Issue 1 and with the Court's holdings in regard to the underinsured motorist definition and offset provision under Issue 2.  For the reasons set forth in my concurring and dissenting opinion in *Hardy v. Progressive Specialty Insurance Co.*, 2003 MT 85, 315 Mont. 107, ___ P.3d ___,  I disagree with the Court's discussion of the anti-stacking provision under Issue 2 and would affirm the District Court's order as to that provision of the policy.

/S/ JIM RICE


Chief Justice Karla M. Gray joins in the concurring and dissenting opinion of Justice Rice.


/S/ KARLA M. GRAY