

DA 07-0006

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 274N

RICHARD E. HARP and LaVONNE K. HARP,

  Plaintiffs and Appellants,

 v.

KAREN MATTHEWS (formerly Handley),

  Defendant and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 05-015,
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

   Richard E. Harp, Sr., and LaVonne K. Harp, pro se, Great
Falls, Montana

  For Appellee:

   Roger T. Witt, Ugrin, Alexander, Zadick & Higgins, P.C.,
Great Falls, Montana

       Submitted on Briefs:  September 12, 2007

          Decided:  October 22, 2007

Filed:

     _____
         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Richard E. Harp (Harp) and LaVonne K. Harp appeal from the District Court's order granting summary judgment to Karen Matthews (Matthews) and denying Harp's motion for summary judgment. We affirm.

¶3    On August 7, 2003, Harp made final preparations to close off a road that ran through his property. The road was used by Harp and his neighbors. Some of Harp's neighbors disputed that Harp could legally close the road. As Harp was installing a gate, his neighbor, Merle Christiansen, drove up and argued for ten to fifteen minutes with Harp about the road closure. Harp became convinced that Christiansen was not going to leave, and Harp stated, "How are you going to stop us?" Christiansen responded, "You're just not going to do it[.]" Harp then retrieved a .357 pistol from his vehicle and strapped on a gun belt. Harp notified Christiansen that Harp was a federal law enforcement officer and ordered him to leave the property. Christiansen responded, "I'm not leaving, so what are you going to do, shoot me?" Harp answered, "Only if

2

necessary," and then informed Christiansen that Harp was placing him under citizen's arrest for criminal trespass.

¶4 Harp's wife contacted law enforcement and Cascade County Sheriff's Deputy Matthews and another deputy responded. During the investigation, Harp informed Deputy Matthews that he was with U.S. Immigration. Matthews interviewed Harp and Christiansen and determined that the dispute centered on the existence of an easement over Harp's land. After reaching a tentative resolution between the neighbors, the deputies left the scene.

¶5 At her captain's suggestion, Matthews contacted the Department of Homeland Security (DHS) to verify Harp's employment. DHS confirmed Harp's employment and requested a copy of Matthews' incident report. Matthews provided DHS a copy of the report after receiving authorization from the Undersheriff. Matthews had no further contact with DHS.

¶6 In November 2003, Harp's supervisor interviewed Harp about the incident and, soon after, Harp's employment was terminated. DHS informed Harp that he was being terminated because he had failed to demonstrate the necessary traits of a DHS law enforcement officer. The termination letter specifically referenced the August 7, 2003 incident, stating:

> [T]wo Deputies from the Cascade County Sheriff's Office responded to a disturbance call over an easement on your property. Before the Deputies arrived, you retrieved a personal weapon from your vehicle and strapped the firearm on your person. You then identified yourself as a Federal Officer to an individual on your property and shortly thereafter told him that he was under arrest.

3

You exercised poor judgment in identifying yourself as a Federal Officer during an off-duty personal matter. You compounded this error by telling the individual that he was under arrest while you were carrying a firearm. Your decision to take this matter into your own hands instead of waiting for Sheriff's Officers to respond to your call was dangerous and irresponsible.

¶7 Harp filed a civil complaint against Matthews alleging that Matthews committed criminal defamation, invasion of privacy, nonfeasance or misfeasance, and breached the public trust when she provided DHS with information relating to the August 7, 2003 incident. The parties filed cross-motions for summary judgment, and the District Court granted Matthews' motion.

¶8 We review de novo appeals from summary judgment and apply the same evaluation as the District Court under M. R. Civ. P. 56. *Ereth v. Cascade County*, 2003 MT 328, ¶ 11, 318 Mont. 355, ¶ 11, 81 P.3d 463, ¶ 11. The party moving for summary judgment must establish that no genuine issues of material fact exist. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 13, 315 Mont. 281, ¶ 13, 68 P.3d 703, ¶ 13. The nonmoving party then bears the burden of raising a genuine issue of material fact beyond mere denial or speculation. *Mitchell*, ¶ 13. If a court determines that no genuine issues of material fact exist, it must then determine whether the moving party is entitled to judgment as a matter of law. *Mitchell*, ¶ 13.

¶9 Harp's claim for damages is based on his termination from DHS. The facts cited by DHS as its basis for terminating Harp are consistent with Harp's affidavit describing the August 7, 2003 incident. Thus, no genuine issues of material fact exist, and the only question is whether Harp is entitled to judgment as a matter of law.

¶10    No private cause of action exists for criminal defamation.  Nor would Harp prevail on a civil claim of libel or slander because Matthews' report was made in the performance of her official duties as a sheriff's deputy.   Section 27-1-804, MCA, provides that a "privileged publication is one made: (1) in the proper discharge of an official duty[.]"   Privileged publications are excepted from the libel and slander definitions. Sections 27-1-802 and 27-1-803, MCA.  Matthews' report clearly falls within the meaning of a privileged publication.   Thus, Matthews, not Harp, is entitled to judgment as a matter of law on this claim.

¶11    Harp's invasion of privacy claim also lacks merit.  Matthews' report was an initial offense report; initial offense reports are considered public criminal justice information and their dissemination is unrestricted.   Sections 44-5-103(13) and 44-5-301, MCA.  Even if we determined that Matthews' report was not public criminal justice information, §§ 44-5-302 and 44-5-303, MCA, provide that non-public criminal justice information may be disseminated to other criminal justice agencies.  The Cascade County Sheriff's Office and DHS clearly qualify as criminal justice agencies within the meaning of § 44-5-103(7), MCA.  Matthews, not Harp, is entitled to judgment as a matter of law.

¶12    It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions.  It is manifest on the face of the briefs and the record before us that the appeal is without merit because the findings of fact are supported by substantial evidence, the legal issues are clearly controlled by settled Montana law which the District

5

Court correctly interpreted, and there was clearly no abuse of discretion by the District Court.

¶13    We affirm.


                                        /S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE