JUSTICE MCKINNON,
dissenting.
¶36 The Court fundamentally errs when it fails to consider the insurance contract as a whole and the plain language of the Insuring Agreement. We have repeatedly held that when we look at an insurance contract to ascertain its purpose and intent, we will examine the contract as a whole, giving no special deference to any specific clause. Mitchell v. State Farm, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703 (quotation and citation omitted).
¶37 Keller and Wagner’s excess liability policy with Westchester unambiguously provides, under “Insuring Agreement,” that “the Company’s obligation hereunder shall not exceed the limit of liability stated in [Item] 6.”[1] The limits of insurance are determined by Item 6, rather than Item 5 as the Court erroneously concludes. Item 6, as contrasted with Item 5 relating to “underlying insurance,” clearly provides that the “limits of [Westchester’s] insurance” is “$4,000,000 Each Occurrence; $4,000,000 General Aggregate.” Item 6 is again referenced as setting the upper limits of insurance in the “Appeals” section of the Westchester policy, which unambiguously provides “but in no event shall the liability of the company for excess loss exceed the amount set forth in [Item] 6.” Item 5, relating to the schedule of underlying insurance provided by CCIC, does not conflict or render ambiguous these clear provisions of the Westchester policy, which *86 incorporates Item 6 and thus limits Westchester’s insurance to $4 million for each occurrence, not to exceed $4 million general aggregate. Nowhere in the Court’s decision have we recognized or acknowledged the existence of the Insuring Agreement, which clearly incorporates the provisions of Item 6 — and not Item 5 — as setting the limits of insurance. The Insuring Agreement’s “shall not exceed the limit” clause does not, as the Court erroneously concludes, refer to or depend on Item 5 or CCIC’s coverage.
¶38 Moreover, the Court’s reliance on the “follow-form” language of the Westchester policy is legally unsound and misconstrues the provisions of the policy.[2] The “follow-form” provision states that, “[ejxcept as otherwise stated herein,” the CCIC policy “shall apply in like manner.” This provision makes clear that where the Westchester and CCIC policies diverge, the distinct terms of the Westchester policy control. As the Westchester policy’s Insuring Agreement clearly specifies policy limits that are different from those set forth in the CCIC policy, Westchester’s terms apply without reference to the CCIC policy limits. The Court errs in concluding Item 5 creates an ambiguity regarding the limits of insurance, as nothing in the insurance documents incorporates Item 5 to establish the limits of insurance. The CCIC policy terms apply only where the Westchester policy terms have not provided otherwise. The incorporation of Item 6 as Westchester’s limit of insurance is expressly provided for in the Westchester policy. I cannot subscribe to manufacturing an ambiguity, as the Court does, when a simple and careful review of the insurance documents does not support coverage beyond the general aggregate amount of $4 million for each occurrence.
¶39 The term “general aggregate” is unambiguous: “The aggregate dollar liability represents the insurer’s maximum total dollar liability. The fact is clear both from the ordinary everyday meaning of the word aggregate, and from case law.” 3 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds § 11:32, 11-501 (5th ed. 2010) (italics omitted); Weyerhaeuser, 15 P.3d at 122 n. 5 (“An aggregate limit defines an insurer’s total liability under a policy.”). The word “general” means “involving or belonging to the whole of a body, group, class, or type: applicable or relevant to the whole rather than to a limited part, group, or section.” Webster’s Third *87 New International Dictionary 944 (Philip Babcock Gove ed. 1971). The phrase “general aggregate;” therefore, clearly refers to Westchester’s maximum liability for the whole insurance policy rather than individual sections of the underlying CCIC policy. Under the provisions of the Westchester policy, the plain and ordinary meaning of “general” and “aggregate” do not require that “general aggregate” be defined in order to avoid an ambiguity within the policy as the Court offers.
¶40 I dissent from our conclusion that the policy is ambiguous and that an additional $4 million in excess insurance coverage is available. As Westchester paid out $4 million in coverage before withdrawing from the defense and tendering it back to CCIC, I would not address the remaining issues.

 The declarations page of the Westchester policy lists the various provisions as Items while its Insuring Agreement refers to them as Declarations. For the sake of consistency, I use the term Item.

 I agree with the Court that the federally mandated MCS-90 endorsement is a surety provision, not a modification of the policy to which it is attached. Opinion, ¶ 18.